**RAYCO CONSTRUCTION COMPANY, INC., Plaintiff,**

v.

**Fred S. VORSANGER et al., Defendants.**

**No. LR–75–C–74.**

United States District Court, E. D. Arkansas, W. D.

July 22, 1975.

and against the Chairman and other members of the Board. The plaintiff attacked on federal constitutional and other grounds the validity of Arkansas Act 264 of 1961, Ark.Stats.Ann. § 14–622 et seq., which gives a 3% bidding preference to bidders on public contracts in this State who fall within the terms of the statute. Plaintiffs sought to have the statute declared unconstitutional and also sought to have the defendants required to let to plaintiff a contract for the construction of a new building for the College of Business Administration on the campus of the University at Fayetteville, which contract had been let to Brennan-Boyd Construction Company of Fayetteville.[1] The defendants denied that plaintiff was entitled to any relief and prayed that the complaint be dismissed.

The cause was submitted to the Court on the pleadings, a stipulation as to certain facts, depositions, memorandum briefs and oral argument. The argument was heard on June 16 of the current year, and the Court went into conference immediately after the conclusion of the arguments.

James M. McHaney, Owens, McHaney & McHaney, Little Rock, Ark., for plaintiff.

Jim Guy Tucker, Atty. Gen., State of Arkansas, Lonnie A. Powers, Deputy Atty. Gen., Sam I. Bratton, Jr., Asst. Atty. Gen., Little Rock, Ark., for defendants.

Before HENLEY, Circuit Judge, and HARRIS and WILLIAMS, District Judges.

PER CURIAM.

This suit in equity which has been heard by a District Court of three judges as provided by 28 U.S.C. § 2281 was brought by Rayco Construction Company, Inc., an Oklahoma corporation, against Fred S. Vorsanger, Vice President for Fiscal Affairs of the University of Arkansas and Secretary of the Board of Trustees of that institution,

In the course of the conference the members of the Court agreed that the "abstention doctrine" which had become involved in the case to some extent should not be applied, that the plaintiff had standing to sue, that Act 264 is unconstitutional, and that defendants should be enjoined from enforcing or complying with it in the future and from proceeding further under the contract with Brennan-Boyd. However, the Court was not willing to order that the contract for the construction of the Business Administration Building be awarded to plaintiff on the basis of its original bid; rather, the Court was of the opinion that the contract should be re-advertised within sixty days, and that bids received from bidders, including plaintiff and Brennan-Boyd, should be considered without reference to Act 264.

---

1. As will appear more fully plaintiff was the low bidder on the contract, but its bid was less than 3% lower than the next low bid which had been submitted by Brennan-Boyd.

The findings and conclusions of the Court were incorporated in a Decree which was filed on June 23, 1975 with the Court reserving the right to file an opinion setting out its views. We now do so.

Act 264 of 1961 is applicable to all contracts for public improvements, the value of which is in excess of $10,000.-00.[2] Section 1 of the Act provides that in awarding contracts to which the statute is applicable "bids of contractors who have satisfactorily performed prior public contracts, and who have paid state and county taxes within the state for not less than two successive years immediately prior to submitting a bid, on a plant and equipment such as is ordinarily required for performance of the contract for which the bid is submitted, or on other real or personal property in the state equivalent in value to such plant, shall be deemed a better bid than the bid of a competing contractor who has not paid such taxes, whenever the bid of the competing contractor is less than three percent (3%) lower, and the contractor making a bid as provided by this act which is deemed the better bid, shall be awarded the contract."

Section 2 of the Act prohibits the award of subcontracts to subcontractors who have not paid taxes as required by the Act.

Section 3 makes the Act inapplicable to certain federal-aid contracts.

Section 4 provides that an officer of the state or political subdivision thereof or a person acting under or for such officers, or a contractor or subcontractor of the state or political subdivision, or any other person, violating the provisions of the Act is guilty of a misdemeanor and punishable for each offense by a fine of not less than $50.00 nor more than $1,000.00 or by imprisonment for not more than six months, or both.

Section 5 is a standard repealing clause.

Section 6 is the "emergency clause" and it reads as follows:

"Whereas, preferences have been granted to Arkansas residents selling commodities to the State and the political subdivisions thereof; and whereas, passage of this Act will aid in the collection of the sales tax and use tax, and this Act being necessary to preserve the public peace, health and safety, an emergency is hereby declared to exist and this act shall be in full force and effect immediately after its passage and approval."[3]

The statute has never been construed by the Supreme Court of Arkansas nor has that Court ever passed upon its constitutional validity under either the Constitution of the United States or that of Arkansas.

The facts in the case are substantially undisputed. Plaintiff corporation is the immediate business successor of a partnership of the same name made up of R. C. Cunningham II and Charles M. Miller, and Mr. Cunningham and Mr. Miller own all of the stock in the corporation. In late 1974 the University advertised for bids on the contract here involved, and bids were submitted by plaintiff, Brennan-Boyd, and other contractors. The bid of Brennan-Boyd was $4,219,000; the bid of plaintiff was $4,116,000.00, which was within 3% of the Brennan-Boyd bid. At the time of the submission of the bids plaintiff corporation had never paid any property taxes in Arkansas and had not qualified to do business in Arkansas as a foreign corporation. It did have an Arkansas public contractor's license.

We find from the evidence that Mr. Cunningham and Mr. Miller are experienced building contractors and have done a great deal of construction work both in Oklahoma and in Arkansas; however, the work done in Arkansas has not involved any public contracts. There is no question, and we find, that

---

2. See Act 159 of 1949 as amended by Act 183 of 1957, Ark.Stats.Ann. § 14–613.

3. The text of the emergency clause appears immediately following the text of Ark.Stats. Ann. § 14–625.

the corporate plaintiff in 1974 was well qualified and fully competent to build the Business Administration Building in a satisfactory manner.

After the bids that were submitted had been opened and examined, Brennan-Boyd claimed the 3% preference prescribed by Act 264. Another Arkansas contractor also claimed the preference, but its over-all bid was somewhat higher than that of Brennan-Boyd.

After ascertaining from the State Department of Finance and Administration that granting the preference to Brennan-Boyd would not violate Section 3 of the Act, the preference was granted, and the contract was awarded to the contractor just mentioned. In early March a formal contract was prepared and executed on behalf of Brennan-Boyd; the contract was signed by the defendant Vorsanger on behalf of the University on March 28.

In the meantime plaintiff had qualified to do business in Arkansas as a foreign corporation, and had put the University on notice that it claimed that it was entitled to the contract; plaintiff filed this suit on March 18, ten days before the contract was signed by Mr. Vorsanger.

Plaintiff attacks Act 264 on a number of grounds, both federal and state. We deem it necessary to mention only plaintiff's contentions that the Act violates the Due Process and Equal Protection Clauses of the 14th Amendment to the Constitution of the United States, and that it also violates the Commerce Clause of the Constitution. Article 1, Section 8, Clause 3.

The defendants deny that the contentions of plaintiff have merit, and they further contend that since plaintiff had not qualified to do business in Arkansas as provided by Ark.Stats.Ann. § 64-1201, the contract could not legally have been let to plaintiff in view of the provisions of Ark.Stats.Ann. § 64-1202 and

that plaintiff has no standing to maintain the action.[4]

■ While the complaint tendered a number of questions of State law and while, as indicated, the Arkansas Supreme Court has never construed Act 264 of 1961, neither side requested us to abstain in favor of state court litigation, and, as has been said, we held that abstention was not required.

Section 64-1202, insofar as here pertinent, provides that if a non-qualifying corporation does business in this State, it may not enforce either at law or in equity any contract made in the State, and that later compliance with the qualifying requirements of Section 64-1201 does not validate the contract.

■ Had the plaintiff entered into a contract with the University prior to qualifying to do business in Arkansas, the contract would have been not only unenforceable but also void *ab initio*. *Worthen Bank & Trust Co. v. United Underwriters Sales Corp.*, 251 Ark. 454, 474 S.W.2d 899 (1971); *Union Planters Nat'l Bank of Memphis v. Moore*, 250 Ark. 272, 464 S.W.2d 786 (1971). That did not happen, however. Plaintiff has never had a contract with the University or with the State itself, and this is not a suit on such a contract. Hence, Section 64-1202 is not applicable to this case, and in our view plaintiff has standing to sue. *Arkansas Airmotive Div. of Currey Aerial Sprayers, Inc. v. Arkansas Aviation Sales, Inc.*, 232 Ark. 354, 335 S.W.2d 813 (1960); cf. *Hicks Body Co. v. Ward Body Works*, 233 F.2d 481 (8th Cir. 1956). We point out in this connection that had the plaintiff's bid been accepted, plaintiff could readily have qualified in Arkansas under Section 64-1201 before final execution of the contract; and, as has been seen, it did qualify prior to the final execution of the contract by Mr. Vorsanger.

■ Coming now to the merits, we find that Act 264 violates both the Due

---

4. Ark.Stats. §§ 64-1201 and 1202, are derived from Act 313 of 1907 as amended; the two sections are frequently referred to as the "Wingo Act."

Process and Equal Protection Clauses of the 14th Amendment. We find it unnecessary to decide whether the Act also violates the Commerce Clause of the Constitution.

Taking up, first, the question of due process, we assume for purposes of discussion that a State may by statute and without violating the Equal Protection Clause of the 14th Amendment give a certain category of bidders on public contracts a preference over bidders not included within that category, provided that the State has a legitimate and substantial interest in granting the preference and that the criteria to be employed in determining what bidders are entitled to the preference are reasonable and non-discriminatory.

We think, however, that if a State, like Arkansas adopts a preference statute and sets out determining criteria and where the statute provides further that both bidders and contracting officers who violate its terms may be punished criminally, due process requires that the criteria set out in the statute be sufficiently definite and concrete to enable bidders to compute their bids intelligently, to enable contracting officers to grant or withhold preferences fairly and intelligently, and to enable both bidders and contracting officers to avoid criminal violations of the statute.

Act 264 does not meet that test.

The criteria set out in Section 1 of Act 264 are not defined in the Act; they do not define themselves, and they are so vague as to be almost meaningless.

One of the statutory criteria is satisfactory performance of prior public contracts. The statute does not say what constitutes satisfactory performance, and it does not say who or what agency must be satisfied. It does not say how long a history of satisfactory performance there must be, or whether the history must have been compiled in Arkansas rather than in some other State or States.

The statute does not define "plant and equipment," and apparently completely ignores the fact that much contracting is done today by contractors who lease or rent, rather than own, the instrumentalities by means of which their contracts are performed. The statute gives no guidelines as to how much "plant and equipment" is "ordinarily required for performance of the contract for which the bid is submitted."

While the preamble to the emergency clause of the Act refers to collections of the State's sales tax and use tax, Section 1 does not define the term "state and county taxes." By virtue of Amendment 47 to the Arkansas Constitution of 1874, the State no longer levies ad valorem taxes on real and personal property and did not do so when Act 264 was adopted. The State does impose income taxes on individuals and corporations. In view of the fact that "state and county taxes" must be paid on plant and equipment or on real or personal property of equivalent value, it is questionable whether State income taxes fall within the purview of Section 1. And a question may be raised as to whether the concept of "county" taxes incorporated in Section 1 includes school district taxes and ad valorem millages imposed by cities and towns.

The statute simply lays down no guidelines by reference to which a bidder can determine in advance whether he is, on the one hand, entitled to a preference or whether, on the other hand, he is subject to one. Nor does the Act give any guidelines to contracting officers in passing upon claims of bidders for preferences under the Act. Apparently, the contracting officers must simply use their own unguided judgment, discretion, or whims in passing upon preference claims.

This absence of guidelines militates against uniform application of the Act throughout the State or from contracting agency to contracting agency, and gives wide play for favoritism, discrimi-

nation, and arbitrary administrative action.

As far as this particular case is concerned, the deposition of Mr. Vorsanger makes it clear that he made no serious effort to pass on Brennan-Boyd's claim for a preference by reference to that company's record as a satisfactory performer of public contracts or to its ownership of plant, equipment or property appropriate to a $4 million construction contract. He testified that he had no idea how much physical plant or equipment or how much real or personal property would ordinarily be required for performance of a contract of the kind in question. If he knew that Brennan-Boyd's taxable real estate in Washington County, Arkansas had an appraised value of only a little over $10,000.00, and that the assessed valuation of personal property was only a little more than $6,000.00 with respect to 1973 and 1974 and only a little over $9,000.00 with respect to 1975, he attached no significance to those figures. All that seems to have concerned him was the question of whether federal funds going into the project would make the granting of the preference a violation of Section 3 of the Act.

We turn now to a consideration of the equal protection aspect of the case. The preamble to the emergency clause suggests that the purpose of the Legislature was to give a bidding preference to Arkansas contractors over contractors from other States; if so, the statute would at best be highly suspect whether considered from the standpoint of the Equal Protection Clause or from the standpoint of the Commerce Clause.

However, Section 1 of the Act which actually creates the preference does not differentiate between contractors on the basis of citizenship, residence, or domicile, although it is rather obvious that from a practical standpoint an established Arkansas contractor is more likely to satisfy the property ownership and tax paying requirements than a contractor from another State.

■ Regardless of whether the Act discriminates against out of State contractors, as such, we find that it discriminates against all contractors, whether foreign or domestic, who do not meet the criteria set up in Section 1. As indicated, we find that this discrimination offends the Equal Protection Clause.

■ There is no doubt that a State may validly differentiate between people or corporations on the basis of classifications provided that the State has a legitimate and significant (in some contexts a "compelling") interest in the differentiation and provided that the classification is based on some reasonable and rational criterion or criteria. On the other hand, it is equally elementary that absent an appropriate State interest or absent rational and relevant standards of classification, State imposed differentiation amounts to unconstitutional discrimination.

■ Looking first at the "satisfactory performance of prior public contracts" criterion, we concede readily to the defendants that the State has a substantial and legitimate interest in having its public contracts performed by capable contractors, and that past satisfactory performance of comparable contracts is a reasonable and rational measuring stick to be used in determining capability. But, the limitation of consideration to satisfactory performance of prior "public" contracts as opposed to satisfactory performance of prior "private" contracts is, in our opinion, completely unreasonable and irrational.

If contractor A. and contractor B. are both bidding on a contract to build a classroom building on a college campus and if both have satisfactorily performed prior contracts for the construction of similar buildings, there is no logical reason to infer that one of them is more competent than the other to construct the building in question because the construction experience of the one has been in the construction of buildings on the campuses of public institutions of

higher learning whereas that of the other has been in the construction of similar buildings on the campuses of private colleges or universities.

As to the property ownership and tax payment criteria, we will say first that it is highly questionable today whether a State can constitutionally differentiate between contractors on the basis of property ownership or tax payments. Certainly, such a differentiation can be upheld only by a showing of a sufficient State interest to justify it.

The defendants would uphold the criteria now under discussion solely by reference to the alleged financial interest of the State and presumably its subdivisions in collecting taxes from contractors and in increasing their tax revenues from that source. And the defendants contend that the bidding preference given to contractors who have paid taxes for two successive years before submitting their bids serves the alleged financial interest just mentioned.

The trouble with that proposition is that its truth is not self-evident, and there is no evidence before us tending to show that the preference has in fact served the fiscal interests of State and local government in Arkansas in any significant way or that it is likely to do so in the future.

On the other hand, it is clear to us that what Act 264, including its criteria, is reasonably calculated to do is discourage persons from entering the public contracting field in Arkansas, reduce competition in that field, and substantially increase the cost of public work in this State as it would have done in this case but for our holding.

While in our June 16 decree we held Act 264 to be unconstitutional, we did not order the contract in suit to be awarded to plaintiff. We did not do so because if other bidders had determined the amounts of their bids without regard to Act 264, their bids might have been lower than they were. When the contract is re-advertised and when the new bids are received, the bid, if any, submitted by the plaintiff may or may not be the low bid.

What has been said here adequately expresses the views underlying our decision.