GALESBURG CONSTRUCTION COMPANY, INC. OF WYOMING, Plaintiff,

v.

The BOARD OF TRUSTEES OF MEMORIAL HOSPITAL OF CONVERSE COUNTY, Defendant.

No. 5607.

Supreme Court of Wyoming.

March 9, 1982.

Don W. Riske, Andrews, Andrews & Riske, P. C. (argued), Cheyenne, for plaintiff.

Steven F. Freudenthal, Atty. Gen., Bruce A. Salzburg, Senior Asst. Atty. Gen. (argued), and I. Vincent Case, Jr., Douglas, for defendant.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

We are presented in this case with a reserved question pursuant to § 1–13–101, W.S.1977.[1] The question set out in plaintiff's brief is whether § 9–8–302, W.S.1977, violates Art. I, § 6, of the Wyoming Constitution,[2] Art. I, § 3, of the Wyoming Constitution[3] and § 1 of the Fourteenth Amendment to the United States Constitution.[4] The questioned statute, § 9–8–302, supra provides:

"Whenever a contract is let by the state, or any department thereof, or any county, city, town, school district, high school district, or other public corporation of the state for the erection, construction, alteration, or repair of any public building, or other public structure, or for making any addition thereto, or for any public work or improvements, such contract shall be let, if advertisement for bids is not required, to a resident of the state. If advertisement for bids is required the contract shall be let to the responsible resident making the lowest bid if such resident's bid is not more than five per-

cent (5%) higher than that of the lowest responsible nonresident bidder."

We shall uphold the statute.

On June 1, 1981, Galesburg Construction Company (Galesburg) was issued its Certificate of Incorporation by the Secretary of State for the State of Wyoming. In July of that year, the Board of Trustees of Memorial Hospital of Converse County (Hospital) announced bidding would be held for a construction project in Douglas. Galesburg submitted a bid on the project to the Hospital. On August 27, 1981, the bids were opened and it was discovered that Galesburg was the lowest bidder for the project. However, on September 14, 1981, the Hospital informed Galesburg that, since it did not qualify as a "resident" of the state of Wyoming, as that term is defined in § 9–8–301, W.S.1977,[5] and because its bid was not more than five percent lower than the lowest resident bidder under § 9–8–302, supra, it would not be awarded the project.

On September 23, 1981, Galesburg filed suit seeking to have § 9–8–302 as applied to

1. Section 1–13–101, W.S.1977:
   "When an important and difficult constitutional question arises in a proceeding pending before the district court on motion of either party or upon his own motion the judge of the district court may cause the question to be reserved and sent to the supreme court for its decision."

2. Article I, § 6, Wyoming Constitution:
   "No person shall be deprived of life, liberty or property without due process of law."

3. Article I, § 3, Wyoming Constitution:
   "Since equality in the enjoyment of natural and civil rights is only made sure through political equality, the laws of this state affecting the political rights and privileges of its citizens shall be without distinction of race, color, sex, or any circumstance or condition whatsoever other than individual incompetency, or unworthiness duly ascertained by a court of competent jurisdiction."

4. Section 1 of the Fourteenth Amendment to the United States Constitution:
   "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citi-

zens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
   Article I, § 34, Wyoming Constitution is the Wyoming version of the right to equal protection:
   "All laws of a general nature shall have a uniform operation."
   *Washakie County School District Number One v. Herschler*, infra.

5. Section 9–8–301, W.S.1977:
   "As used in this act [§§ 9–8–301 to 9–8–304, 9–8–308] the word 'resident' means any person who shall have been a bona fide resident of the state for one (1) year or more immediately prior to bidding upon the contract; a partnership or association, each member of which shall have been a bona fide resident of the state for one (1) year or more immediately prior to bidding upon the contract; a corporation which has been organized under the laws of the state of Wyoming and has been in existence therein for one (1) year or more immediately prior to bidding upon the contract and which has its principal office and place of business within the state of Wyoming."

it declared unconstitutional.[6] On October 7, 1981, the parties and the Wyoming Attorney General entered into a stipulation setting forth the uncontroverted facts and requesting that the question of the statute's constitutionality be reserved to this court. Pursuant to that request, the district judge filed his findings of fact and ordered that the constitutional question be reserved. The district court fully complied with the rule that all preliminary matters including factual questions must first be disposed of before the supreme court will consider a reserved constitutional question. *State v. Rosachi*, Wyo., 549 P.2d 318 (1976).

## I

■ When presented with a constitutionally based challenge to a statute, this court presumes the statute to be constitutional unless the party mounting the challenge proves otherwise. *Nickelson v. People*, Wyo., 607 P.2d 904 (1980). This is because there exists a strong presumption in favor of constitutionality. *Sorenson v. State*, Wyo., 604 P.2d 1031 (1979). Any doubt in the matter must be resolved in favor of the statute's constitutionality. *Washakie County School District Number One v. Herschler*, Wyo., 606 P.2d 310 (1980), cert. denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28. Thus, before we will strike down a statute we must find that it clearly violates one of the principles of our state and national constitutions by which we are bound. When there is a transgression of either of those documents, we must not and will not hesitate to declare the legislative enactment invalid. *Washakie County School District Number One v. Herschler*, supra.

## II

■ Though Galesburg stated the question for us in terms which included chal-

lenges based upon Art. I, §§ 3 and 6 of the Wyoming Constitution, these provisions were not argued as authority in the brief, and, in fact, were not mentioned other than in the statement of the issues. A constitutional question reserved to the supreme court from the district court is too important to be answered at random and it will not be answered unless fully presented and argued. *Salt Creek Transportation Company v. Public Service Commission*, 37 Wyo. 488, 263 P. 621 (1928). The real crux of Galesburg's challenge can be found in the two-tiered equal protection-due process analysis which has been developed by the United States Supreme Court in connection with the Fourteenth Amendment, supra. Galesburg has argued that under such an approach § 9–8–302, supra, must fall.

■ The test for determining whether a legislative enactment passes muster under an equal-protection or due-process challenge exists on two levels. The decision as to which level of scrutiny should be employed has often been as important as the actual application of the test. Strict scrutiny, which requires a much more rigorous examination, is used when the statute in question employs a suspect classification or traverses a fundamental right. Under strict scrutiny, before the statute can be upheld, the reviewing court must find that the statute serves some compelling state interest and that it is narrowly drawn so as to not unnecessarily interfere with a fundamental right or use a suspect classification. *Washakie County School District Number One v. Herschler*, supra.

Under a lower level of scrutiny, the reviewing court must merely determine whether the statute serves a legitimate state interest. If so, all that is required is that the statute be rationally related to the advancement of that interest. Unless these

**6.** Galesburg's complaint stated in pertinent part:
  "11. W.S. 9–8–302, on its face and as applied to the Plaintiff by the Defendant:
    "a. violates Article 1, Section 6 of the Constitution of the State of Wyoming by depriving the Plaintiff of its property rights without due process of law;

    "b. violates the Plaintiff's due process and equal protection guarantees under Section 1, Amendment 14 to the Constitution of the United States;
    "c. creates a classification which arbitrarily discriminates against the Plaintiff without any rational relationship to a legitimate state interest."

conditions are shown not to exist, the statute must be upheld. *Washakie County School District Number One v. Herschler,* supra.[7]

### III

■ Galesburg argues that we should evaluate the constitutionality of § 9–8–302, supra, with strict scrutiny. It supports this position by string citing other cases in which durational residency requirements were subjected to strict scrutiny. However, Galesburg failed to carefully consider why each of those cases deserved the higher level of scrutiny.[8]

In each of the cited cases either a fundamental right or a suspect classification was implicated. The fundamental rights generally found injured by durational residency requirements in those cases were the right of interstate travel and the right to vote. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1960); *State v. Van Dort,* Alaska, 502 P.2d 453 (1972); *Jarmel v. Putnam,* 179 Colo. 215, 499 P.2d 603 (1972); *Delgiorno v. Huisman,* Wyo., 498 P.2d 1246 (1972). These fundamental rights have never been extended to corporations under the Fourteenth Amendment. In fact, the language in the Amendment seemingly excludes corporations by referring to "[a]ll persons born or naturalized in the United States." Corporations are fictitious entities incapable of being born (in a biological sense), voting, or traveling. They do not possess those fundamental rights.

Neither can we accept that Galesburg is a member of a suspect classification. Such status is usually only awarded to racial and nationality minorities, victims of invidious discrimination. *McLaughlin v. Florida,* 379 U.S. 184, 192, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964). There is nothing in the record showing Galesburg to belong to such a minority. Further, such status has never been given to corporations since the Fourteenth Amendment was designed to protect people not business organizations. Accordingly the statute as applied to Galesburg does not warrant strict scrutiny, and thus we must employ the lower level of scrutiny.

### IV

■ The recognized testing criteria to determine whether a state statute violates equal protection rights under the rational-basis standard are summarized in *Morey v. Doud,* 354 U.S. 457, 463–464, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957):

" '1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is

---

7. There have been some indications a third level may exist for gender-based classifications, *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), i.e., "must serve important governmental objectives and must be substantially related to achievement of those objectives."

8. Not all the cases cited were right on point. One, *York v. State,* 53 Hawaii 557, 498 P.2d 644 (1972), found a three-year residency requirement for public employment not to require strict scrutiny; however, the court struck it down anyway using only the rationally-related test. Another case cited not belonging here was *Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948). That case was

decided on the basis of the Privilege and Immunities Clause. However, that clause, which protects citizens of one state in regards to activities in another state, is not involved here because Galesburg is a Wyoming corporation trying to do business in Wyoming. We also can find no support for Galesburg's position in *Rayco Construction Company, Inc. v. Vorsanger,* 397 F.Supp. 1105 (ED Ark.1975). It held the statute in question discriminatory as to both domestic and foreign contractors and applied a strict construction test because of its criminal sanctions for violations. It did not hold that a proper preference may not be allowed and in fact intimated it could.

called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' [Citation.]"

Viewing the statute, as it is applied to Galesburg, under the lower level of scrutiny, we must determine whether the statute serves a legitimate state interest and whether it is rationally related to the advancement of that interest. Previously it has been said that the purpose of § 9–8–302, supra, was "to encourage local industry." Opinions, Attorney General of Wyoming, No. 49, June 24, 1963, at page 240.[9] We agree that this appears to have been the legislature's likely intent. We further hold that this is definitely a legitimate state interest. Accordingly, the only question left is whether the statute as drawn is rationally related to the advancement of this state interest. We hold that it is.

By giving Wyoming corporations[10] a handicap in bidding on public contracts, the statute in essence increases the likelihood that a Wyoming corporation will be awarded the contract. When contracts are awarded to Wyoming corporations, as opposed to out-of-state corporations, local industry is encouraged. This contributes to, strengthens, and stabilizes the state and

local economy—the primary interest is that of the public. *Equitable Shipyards, Inc. v. State*, 93 Wash.2d 465, 611 P.2d 396 (1980). A benefit to a particular person, be it corporate or natural, is only incidental and not lethal to constitutionality. The money payable under the contract is more likely to remain within the state, and enhance the tax base of state and local government.[11] Therefore, we conclude that, as applied to Galesburg, the statute does not run afoul of the Fourteenth Amendment.

Galesburg has failed to carry its burden that the statute is essentially arbitrary.

## V

The remaining portion of Galesburg's argument is to the effect that we should declare the statute unconstitutional on a public policy basis. As stated earlier, we have no authority to overturn statutes enacted by the legislature merely because we believe that they are against public policy. The legislature announces public policy by its enactments. Statutes are entitled to a presumption of constitutionality unless the challenging party clearly establishes that constitutional principles are violated by the statute. Public policy is not a basis for declaring a statute unconstitutional. Wisdom or expediency of statutes is for the legislature and not the courts. *Denny v. Stevens*, 52 Wyo. 253, 75 P.2d 378, 113 A.L.R. 1337 (1938). Courts must not usurp or encroach upon the legislative function.

---

**9.** Opinions of the Attorney General construing statutes are entitled to weight, particularly when they have been weathered by time and where the legislature has failed over a long period to make any change in a statute following its interpretation by the Attorney General. Such acquiescence is worthy of careful consideration in an inquiry into the intent of that body. *School Districts Nos. 2, 3, 6, 9 and 10, Campbell County v. Cook*, Wyo., 424 P.2d 751 (1967). That construction has stood for nearly twenty years.

**10.** We note that Galesburg's challenge in this case is to § 9–8–302, supra. No challenge was made to § 9–8–301, supra, which defines a Wyoming corporation as one having been incorporated in Wyoming for more than one year. Thus, we need not evaluate the one-year requirement.

**11.** Arizona has a statute which specifically grants a 5% preference to contractors who have paid county and state taxes for two successive years previous to making the bid. In *Schrey v. Allison Steel Mfg. Co.*, 75 Ariz. 282, 255 P.2d 604 (1953), the statute was held constitutional as not discriminatory in that the legislature had a right to believe and it may be a fact that the interests of the state and the political subdivisions would be better served. The taxes requirement was held to be a reasonable test to determine the responsibility of the bidder. We note that § 9–8–302, supra, the Wyoming statute being questioned, requires that the contract must be let to a responsible bidder.

*Kennedy v. State,* Wyo., 559 P.2d 1014 (1977). We only consider public policy when the constitution or statutes have not spoken. The legislature has announced the public policy in this instance. Accordingly, we cannot consider Galesburg's argument.

We hold that, as applied to Galesburg, § 9–8–302, supra, is constitutional.

Returned to the district court, reserved constitutional question argued, answered.

ROONEY, Justice, dissenting.

Although I agree that there is a definite state interest in encouraging local industry, I cannot agree that such encouragement results from a statute which prevents a person who has been a resident of the state for many years from bidding on construction of a public building contract, without penalty, simply because he exercised his privilege to do business as a corporation within the year previous to the bid. Accepting all of the law cited in the majority opinion, I cannot find either a "legitimate state interest" or a "reasonable/rational" basis for giving a preference to A, who has lived in Wyoming for two years and makes his bid on construction of a public building as an individual, over B, who has lived in Wyoming for thirty years but makes his bid under the name of a corporation wholly owned by him but incorporated only a month prior to the bid.

That exact situation can result from the majority holding. The statute, then, would have an arbitrary and capricious application and would be violative of all of the constitutional provisions set forth in the question here reserved to us by the district court:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the following specific constitutional question be, and the same hereby is, reserved and sent to the Wyoming Supreme Court for its decision:

"WHETHER W.S. 9–8–302, WHICH STATES:

" 'Whenever a contract is let by the state, or any department thereof, or any county, city, town, school district, high school district, or other public corporation of the state for the erection, construction, alteration, or repair of any public building, or other public structure, or for making any addition thereto, or for any public work or improvements, such contract shall be let, if advertisement for bids is not required, to a resident of the state. If advertisement for bids is required the contract shall be let to the responsible resident making the lowest bid if such resident's bid is not more than five percent (5%) higher than that of the lowest responsible nonresident bidder.'

"VIOLATES ARTICLE I, SECTION 6, OF THE WYOMING CONSTITUTION, AND/OR ARTICLE 1, SECTION 3, OF THE WYOMING CONSTITUTION AND/OR SECTION 1 OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

It may be contended that I am assuming a fact not present—that the record does not reflect the plaintiff's stockholders to have been Wyoming residents for an extended period prior to incorporation. But the majority opinion makes a like assumption. The record does not reflect that such stockholders were *not* long-time residents of Wyoming. If this fact were necessary to resolve the constitutional question, the matter would not be ripe for answer to a reserved question. *State v. Rosachi,* Wyo., 549 P.2d 318 (1976). However, the intent of the legislature as indicated by the legislative history of § 9–8–301, W.S.1977 [1] was to preclude

---

1. Section 9–8–301, W.S.1977, provides:
   "As used in this act [§§ 9–8–301 to 9–8–304, 9–8–308] the word 'resident' means any person who shall have been a bona fide resident of the state for one (1) year or more immediately prior to bidding upon the contract; a partnership or association, each member of which shall have been a bona fide resident of the state for one (1) year or more immediately prior to bidding upon the contract; a corporation which has been organized under the laws of the state of Wyoming and has been in existence therein for one (1) year or more immediately prior to bidding upon the contract and which has its principal office and

a long-time resident from bidding on construction of a public building contract, without penalty, through a wholly-owned corporation within a year after its incorporation. The following amendment to changes in § 9–8–301 was accepted on the House's second reading of the file in 1961, but was struck on the third reading:

"At the end of the last sentence strike the period insert a semi-colon and the following language: 'provided, however, that any corporation formed by persons who are bona fide residents of the State for one year or more immediately prior to bidding upon a contract and the corporate stock of which is owned in full by such bona fide residents shall be included within the meaning of the word "resident".'" Digest of Journals, 36th Legislature, p. 65 (1961).

Legislative intent may be determined through legislative history. *Saffels v. Bennett*, Wyo., 630 P.2d 505 (1981); *Sanches v. Sanches*, Wyo., 626 P.2d 61 (1981).

It may also be contended that the reserved question concerns an inquiry about § 9–8–302, W.S.1977 [2] and that we should not consider the constitutionality of § 9–8–301, W.S.1977. Such contention overlooks the fact that § 9–8–301 defines the terms used in § 9–8–302. The meaning and legislative intent as expressed in § 9–8–302 cannot be ascertained without reference to the validity of § 9–8–301. Whether or not § 9–8–302 is violative of the Constitutions depends upon the language thereof as defined by § 9–8–301. The word "resident" as used in § 9–8–302 makes the application of the section unconstitutional. Section 9–8–301 must be examined to determine the constitutionality of § 9–8–302. They must be considered *pari materia.*

"It is a fundamental principle of statutory construction that to ascertain the meaning of a given law all statutes relating to the same subject or having the same general purpose shall be read in connection with it as constituting one law. They must be construed in harmony, else the law of the State would consist of disjointed and unharmonious parts with a conflicting and confusing result. * * * " *Stringer v. Board of County Commissioners of Big Horn County*, Wyo., 347 P.2d 197, 200 (1959). See *Kuntz v. Kinne*, Wyo., 395 P.2d 286 (1964); *Brinegar v. Clark*, Wyo., 371 P.2d 62 (1962).

Although upholding a state tax exemption for nonresidents on merchandise held in storage, the United States Supreme Court said, in applying the rational-basis test:

" * * * [T]here is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' * * * " *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959). See *York v. State*, 53 Hawaii 557, 498 P.2d 644 (1972).

I am not here addressing the reasonableness of the 5 percent figure vis-a-vis 4 percent, 1 percent, 25 percent, 65 percent, etc.,—nor did the majority opinion—nor did the stipulation of facts upon which was based the finding of facts in the court's order. And I am not here addressing the constitutionality of the statute as it might pertain to a penalty applicable only to actual nonresident persons or entities. I note in this connection, however, that an arbitrary classification has been held to exist in a statute prohibiting employment of aliens on public works. *Purdy & Fitzpatrick v. State,*

place of business within the state of Wyoming."

2. Section 9–8–302, W.S.1977, is quoted in the question as reserved, supra.

71 Cal.2d 566, 79 Cal.Rptr. 77, 456 P.2d 645 (1969). See *Torao Takahashi v. Fish and Game Commission*, 334 U.S. 410, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948).

I would answer the reserved question by holding the statute unconstitutional in denying equal protection to some persons to which it is applicable, i.e., those long-time Wyoming residents who have chosen to do business as a corporation within a year previous to the bids referred to in the statute.