**STATE of Wyoming, Plaintiff,**

v.

**Roger ANTONICH, Defendant.**

No. 84–35.

Supreme Court of Wyoming.

Jan. 10, 1985.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Michael A. Blonigen, Asst. Atty. Gen., for plaintiff.

Daniel E. White, Cheyenne, for defendant.

Before THOMAS,* C.J., and ROSE, ROONEY,** BROWN and CARDINE, JJ.

ROSE, Justice.

We granted the State of Wyoming's application to file a bill of exceptions in order to address a single issue:

> "Does the Wyoming Preference for State Laborers Act, Section 16–6–201, et seq., W.S. 1977, violate the privileges and immunities clause of the United States Constitution?"

We will hold that the challenged Act is narrowly tailored to fit a particular problem identified by the State and, therefore, does not impermissibly infringe the privileges and immunities of the citizens of states other than Wyoming.[1] Accordingly, we sustain the bill of exceptions filed by the State.

WYOMING PREFERENCE
ACT OF 1971

In 1971, the legislature adopted the "Wyoming Preference Act," §§ 16–6–201

---

* Became Chief Justice January 1, 1985.

** Chief Justice at time of oral argument.

1. The United States Constitution, Art. IV, § 2, provides:

"The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

through 16–6–206, W.S.1977, which requires contractors to employ available qualified Wyoming laborers for public-works projects in preference to nonresident laborers. Section 16–6–203, W.S.1977, contains the key provision of the Act:

> "Every person who is charged with the duty of construction, reconstructing, improving, enlarging, altering or repairing any public works project or improvement for the state or any political subdivision, municipal corporation, or other governmental unit, shall employ only Wyoming laborers on the project or improvement. Every contract let by any person shall contain a provision requiring that Wyoming labor be used except other laborers may be used when Wyoming laborers are not available for the employment from within the state or are not qualified to perform the work involved. The state employment office nearest the proposed contract or construction site shall maintain a list of laborers, classified by skills, who are residents and are available for employment. When the nearest state employment office is unable to provide the requested number of laborers from its own list, it shall immediately contact other state employment offices and request the names of other available laborers. Every person required to employ Wyoming laborers shall inform the nearest state employment office of his employment needs. If the state employment office certifies that the person's need for laborers cannot be filled from those listed as of the date the information is filed, then the person may employ other than Wyoming laborers."

On September 22, 1983, the Converse County prosecuting attorney charged Roger Antonich, general superintendent of Westates Construction Company, with violating § 16–6–203, supra. The information alleged that Antonich fired a Wyoming worker from a public-school construction project in order to hire out-of-state workers. The county court judge dismissed the charge on the ground that § 16–6–203, supra, violates the privileges and immunities clause of the federal constitution. The

court relied on *Hicklin v. Orbeck*, 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), and recent cases from other jurisdictions in which the courts have invalidated statutory preferences for local workers. After examining these and similar opinions, we conclude that certain distinguishing features in Wyoming's Preference Act sufficiently limit its scope so as to satisfy the demands of the privileges-and-immunities clause.

## PRIVILEGES–AND–IMMUNITIES CLAUSE ANALYSIS

■ An examination of a state enactment to determine its validity under the privileges-and-immunities clause involves a two-step analysis. First, the reviewing court must determine whether the statute burdens a fundamental right or activity, since only those "privileges" and "immunities" which bear upon the concept of interstate harmony fall within the scope and purpose of the clause. *United Building and Construction Trades Council of Camden County and Vicinity v. Mayor and Council of the City of Camden,* — U.S. ——, —— – ——, 104 S.Ct. 1020, 1027, 79 L.Ed.2d 249, 258–259 (1984); *Baldwin v. Fish and Game Commission of Montana,* 436 U.S. 371, 383–388, 98 S.Ct. 1852, 1860– 1862, 56 L.Ed.2d 354 (1978); *Toomer v. Witsell,* 334 U.S. 385, 395–396, 68 S.Ct. 1156, 1161–1162, 92 L.Ed. 1460 (1948). Second, the court must examine the reasons for the discriminatory treatment to determine their validity and their relation to the degree of discrimination imposed by the statute. This portion of the test was developed by the United States Supreme Court in *Toomer v. Witsell,* supra:

> "Like many other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. *Thus the inquiry in*

*each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. The inquiry must also, of course, be conducted with due regard for the principle that the States should have consideration leeway in analyzing local evils and in prescribing appropriate cures."* (Emphasis added.) 334 U.S. at 396, 68 S.Ct. at 1162.

The Toomer court established that classifications based on non-citizenship cannot stand

" * * * unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." 334 U.S. at 398, 68 S.Ct. at 1163

The State concedes that the discrimination against nonresidents under the Wyoming Preference Act burdens a fundamental right. In an early case, the United States Supreme Court held that the privileges-and-immunities clause protects the right of a citizen of one state to travel to another state for purposes of employment. *Ward v. Maryland,* 79 U.S. (12 Wall) 418, 430, 20 L.Ed. 449 (1870). The Supreme Court reaffirmed this principle in *Hicklin v. Orbeck,* supra, 437 U.S. at 525, 98 S.Ct. at 2487. Even more pertinent to the instant case, the Supreme Court recently held that an enactment preferring local workers for public construction projects burdens a fundamental right and, therefore, falls within the purview of the privileges-and-immunities clause. *United Building and Construction Trades Council of Camden County and Vicinity v. Mayor and Council of the City of Camden,* supra, —— U.S. at ——–——, 104 S.Ct. at 1027–1029, 79 L.Ed.2d at 258–261. Clearly, Wyoming's Preference Act offends the privileges-and-immunities clause unless a close link exists between valid reasons for the Act and the discrimination practiced.

The State, in its brief, identifies the purpose of the Act as the reduction in unemployment among the labor force which makes possible government projects through contributions to the public treasury. Stated conversely, the evil which the Wyoming Preference Act combats is

" * * * a resident remaining unemployed while a nonresident takes a job on a Wyoming public works project." (State's brief.)

Thus, the Wyoming Preference Act attempts to insure that government-created jobs benefit the State's citizens.

Without question, reduction in unemployment among Wyoming citizens constitutes a valid state goal. See *United Building and Construction Trades Council of Camden County* and *Vicinity v. Mayor and Council of the City of Camden,* supra; *Hicklin v. Orbeck,* supra. We turn, therefore, to an examination of the relationship between this legitimate reason underlying the Wyoming Preference Act and the discrimination mandated against nonresidents.

Enactments to alleviate high unemployment levels through the hiring of residents in preference to nonresidents generally have swept too broadly to survive challenges brought under the privileges-and-immunities clause. The prime example of such legislation is the "Alaska Hire" Act at issue in *Hicklin v. Orbeck,* supra. That Act required the employment of qualified Alaska residents in preference to nonresidents for positions associated with

" * * * all oil and gas leases, easements or right-of-way permits for oil or gas pipeline purposes, unitization agreements, or any renegotiation of any of the preceding to which the state is a party * * *." 437 U.S. at 520, n. 2, 98 S.Ct. at 2485 n. 2.

The United States Supreme Court cited three bases for holding that the discrimination imposed by this statute failed to bear a close relation to the problem of high unemployment in Alaska. First, the state had made no showing that nonresidents were a peculiar source of widespread unemployment. Rather than the influx of nonresidents looking for work, the major cause of unemployment appeared to be the inade-

quate education and training and the geographical remoteness of many jobless residents—particularly the Eskimo and Indian residents. 437 U.S. at 526–527, 98 S.Ct. at 2487–2488. Secondly, the Court determined that Alaska Hire did not narrowly address the problem of unemployment, since the Act simply preferred all residents, regardless of their employment status, education or training. 437 U.S. at 527, 98 S.Ct. at 2488. Finally, the Supreme Court observed that the discriminatory effect of Alaska Hire extended well beyond those activities in which the state held a substantial proprietary interest:

"* * * In sum, the Act is an attempt to force virtually all businesses that benefit in some way from the economic ripple effect of Alaska's decision to develop its oil and gas resources to bias their employment practices in favor of the State's residents. We believe that Alaska's ownership of the oil and gas that is the subject matter of Alaska Hire simply constitutes insufficient justification for the pervasive discrimination against nonresidents that the Act mandates." 437 U.S. at 531, 98 S.Ct. at 2490.

A number of state courts have adopted the foregoing rationale in invalidating enactments which grant an employment preference to local workers. *Laborers Local Union No. 374 v. Felton Construction Company*, 98 Wash.2d 121, 654 P.2d 67 (1982); *Massachusetts Council of Construction Employers, Incorporated v. Mayor of Boston*, 384 Mass. 466, 425 N.E.2d 346 (1981), rev'd under the commerce clause, 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983); *Salla v. County of Monroe*, 48 N.Y.2d 514, 399 N.E.2d 909, 423 N.Y.S.2d 878, cert. denied 446 U.S. 909, 100 S.Ct. 1836, 64 L.Ed.2d 262 (1979). We find, however, that Wyoming's Preference Act, unlike the enactments at issue in these cases and Alaska Hire, precisely fits the particular evil identified by the State.

As noted above, the act seeks to prevent a qualified Wyoming worker's remaining unemployed while a nonresident goes to work on a government-funded construction project. The statute makes no attempt to eradicate the general unemployment in this state which may be due to factors unrelated to nonresidents. Accordingly, the Act directs its discriminatory treatment toward the nonresident applicants for jobs on public-works projects—those individuals who constitute the peculiar source of the evil identified by the State.

Secondly, the Wyoming Preference Act specifically addresses the problem of unemployment among Wyoming construction workers. Section 16–6–203, supra, requires contractors to contact the local employment office to determine whether qualified resident workers are available. If the number of qualified residents listed with state employment offices is insufficient to meet employment needs, contractors are free to hire nonresident workers. An employer need not attempt to hire residents away from other jobs or to dismiss nonresidents and hire residents as they become available. Under the Act, an employer must deny nonresidents employment only when the state employment office provides a sufficient number of residents who are qualified and available to go to work.

Finally, we attach significance to the fact that the Wyoming Preference Act confines its discriminatory effects to projects constructed from public funds. The government's proprietary interest in the subject matter of the discriminatory statute constitutes a crucial factor in support of the statute's validity:

"* * * The fact that [the city] is expending its own funds or funds it administers in accordance with the terms of a grant is certainly a factor—perhaps the crucial factor—to be considered in evaluating whether the statute's discrimination violates the Privileges and Immunities Clause. But it does not remove the [city] ordinance completely from the purview of the Clause." *United Building and Construction Trades Council of Camden County and Vicinity v. Mayor and Council of the City of Camden*, supra,

—— U.S. at ——, 104 S.Ct. at 1029, 79 L.Ed.2d at 260.

The Court elaborated in that case:

"Every inquiry under the Privileges and Immunities Clause 'must ... be conducted with due regard for the principle that the states should have considerable leeway in analyzing local evils and in prescribing appropriate cures.' *Toomer v. Witsell,* 334 U.S. 385, 396, 68 S.Ct. 1156, [1162], 92 L.Ed. 1460 (1948). This caution is particularly appropriate when a government body is merely setting conditions on the expenditure of funds it controls." —— U.S. at ——, 104 S.Ct. at 1030, 79 L.Ed.2d at 261.

The Wyoming statute at issue in the present case requires merely that governmental funds, allocated to public-works projects, be used to hire qualified, available residents in preference to nonresidents. The statute does not effect the sort of wide-ranging discriminatory treatment fatal to Alaska Hire in Hicklin v. Orbeck, supra. Since the Wyoming Preference Act limits its discriminatory effect to government-created jobs, it presents minimal affront to the privileges and immunities of noncitizens. *United Building and Construction Trades Council of Camden County and Vicinity v. Mayor and Council of the City of Camden,* supra.

█ We hold that the Wyoming Preference Act does not violate the privileges-and-immunities clause of the federal constitution, notwithstanding the Act's infringement upon a recognized fundamental right. The Act narrowly addresses the goal of reduced unemployment among the state's taxpayers by preferring available, qualified residents for government-funded positions. Since the degree of discrimination bears a close relation to the state's valid reasons for discriminatory treatment, we affirm the Act's validity under the test established in *Toomer v. Witsell,* supra, and refined in subsequent cases.

Although not determinative of our decision here, we recently held in *Galesburg Construction Company, Inc. of Wyoming v. Board of Trustees of Memorial Hospital of Converse County,* Wyo., 641 P.2d 745 (1982), that Wyoming's preference for resident bidders on public-works contracts, § 9–8–302, W.S.1977, does not violate the equal-protection provisions of the state and federal constitutions. Our result in the instant case, upholding Wyoming's preference for resident workers on public-works projects, harmonizes with our decision in *Galesburg Construction Company, Inc. of Wyoming v. Board of Trustees of Memorial Hospital of Converse County,* supra.

The bill of exceptions is sustained.

THOMAS, Chief Justice, specially concurring.

I am in complete accord with the result reached by the majority in this case, but I have a concern about the adequacy of the record to support the nexus between the evil of "a qualified Wyoming worker's remaining unemployed while a nonresident goes to work on a government-funded construction project" and the statute in question. I agree that that is a possibility, but the record does not demonstrate it. The statutory language simply makes the state employment offices a repository of information, and does not limit the "list of laborers, classified by skills, who are residents" to the unemployed. It simply requires that they be "available for employment."

I am satisfied that on the basis of existing precedent the role of the State in connection with "constructing, reconstructing, improving, enlarging, altering or repairing any public works project or improvement for the state or any political subdivision, municipal corporation or other governmental unit" is that of a market participant pursuing essentially a proprietary function. It is inappropriate to invoke the Privileges and Immunities Clause to inhibit the State in that regard. Both *Hicklin v. Orbeck,* 437 U.S. 518, 98 S.Ct. 2482, 57 L.Ed.2d 397 (1978), and *United Building and Construction Trades Council of Camden County and Vicinity v. Mayor and Council of the City of Camden,* —— U.S. ——,

104 S.Ct. 1020, 79 L.Ed.2d 249 (1984), recognize that the proprietary interest of the State in the property with which the statute deals is often a crucial factor in determining whether a discriminatory statute against non-citizens violates the Privileges and Immunities Clause. I perceive that, without articulating such a concept, the Supreme Court of the United States has preserved a delicate balance between the Reservation of Powers Clause found in Amendment X to the Constitution of the United States of America and the Privileges and Immunities Clause. The line that is drawn is that between the governmental function of the State and the right of the State to participate in the marketplace, satisfy its proprietary functions, and contract freely with those with whom it chooses to contract.

In *Hicklin v. Orbeck*, supra, at 437 U.S. 531, 98 S.Ct. at 2490, the Supreme Court recognized what it described as a mutually reinforcing relationship between the Privileges and Immunities Clause of Art. IV, § 2, and the Commerce Clause, which it said stems from their origin in the Fourth Article of the Articles of Confederation. In *Reeves, Inc. v. Stake*, 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980), the Court said:

> " * * * The State's refusal to sell to buyers other than South Dakotans is 'protectionist' only in the sense that it limits benefits generated by a state program to those who fund the state treasury and whom the State was created to serve. * * Such policies, while perhaps 'protectionist' in a loose sense, reflect the essential and patently unobjectionable purpose of state government—to serve the citizens of the State."

Conceding that the Court there was dealing with the application of the Commerce Clause, because of the mutually reinforcing relationship between the two clauses I find that concept applicable in this instance with respect to the Privileges and Immunities Clause.

It cannot be held objectionable for a sovereign state to adopt legislation which provides in essence that to the extent possible public works contracts benefit the citizens of the state whose contributions to the public treasury fund those projects. A state should not be foreclosed by the invocation of the Constitution of the United States of America from loyalty to interests of its own citizens. So long as a statute is narrowly drawn to protect only the right of the state to contract as it sees fit with respect to expenditures for public works projects which it owns and which it funds, I am satisfied that as a matter of law such a statute does not offend the Privileges and Immunities Clause found in Art. IV, § 2 of the Constitution of the United States of America. This, of course, makes it unnecessary for the court to pursue the remand technique invoked in *United Building and Construction Trades Council of Camden County and Vicinity v. Mayor and Council of the City of Camden*, supra.

I would agree that the bill of exceptions should be sustained for the foregoing reasons.