Karl W. SCHAKEL, a/k/a Karl Schakel, Appellant (Defendant below),

v.

The STATE of Wyoming, Appellee (Plaintiff below).

No. 4200.

Supreme Court of Wyoming.

Aug. 27, 1973.

John E. Stanfield, Smith, Stanfield & Mendicino, Laramie, for appellant.

Clarence A. Brimmer, Atty. Gen., Donald H. Hall, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE, and McINTYRE, JJ.

Mr. Justice GUTHRIE delivered the opinion of the court.

This appeal is from a judgment against the appellant, finding him guilty of violating § 23–54, W.S.1957.[1] The sole question raised is the constitutionality of that section.

Schakel, who had purchased a nonresident deer license, was arrested on October 6, 1972, while hunting deer on National Forest lands without a guide. In all other particulars he was complying with the regulations as they govern hunting. Schakel was a resident of Colorado, although he owned substantial properties in Wyoming and had owned property here for some years. He was well acquainted with this area.

Schakel moved to dismiss the original complaint in justice of the peace court upon the basis of the unconstitutionality of this statute. This motion was overruled, and when no other evidence was submitted in his defense the court entered its finding of guilty and assessed a fine of $100 and $4 in costs. Upon appeal to the district court Schakel again raised the question of the constitutionality thereof and introduced his testimony and that of Dewey Henderson, Deputy Supervisor of the Wyoming Game and Fish Commission for the district

[1] " * * * It shall be unlawful for any person who is not the owner of a resident license or permit lawfully authorizing the same to hunt, pursue or kill, or attempt to hunt, pursue or kill any elk, deer, bear, moose or mountain sheep on any land within any national forest, national park or national game refuge within the boundaries of the State of Wyoming, any part of which is open to the hunting of deer, elk, moose or mountain sheep at any time during the calendar year in which said hunting is done, unless accompanied by a licensed guide; provided, however, that parties of two or more such persons hunting together need not be accompanied by more than one licensed guide for each two such persons. " * * * No such licensed guide shall be required for not more than two non-residents hunting together when accompanied without compensation or gratuity by a resident of the State of Wyoming who is the owner of a resident big game license and a resident guiding permit. A resident guiding permit shall be issued, without charge and without bond, by the Cheyenne office or by any district supervisor or by any resident deputy game warden of the Wyoming game and fish commission to any resident of Wyoming owning a big game license in effect if and when such resident shall make and file an affidavit stating the names and ad-

dresses of not more than two non-resident hunters to be guided, the game to be hunted, the area in which they will hunt, and that such resident has not received nor will accept directly or indirectly any remuneration whatsoever. A resident guide shall not guide more than two non-residents in each calendar year regardless of the number of resident guiding permits issued to him in each calendar year.
" * * * A resident landowner may guide non-resident hunters on land owned by or deeded land leased to such resident landowner without any guide license or permit, or authorize non-residents to hunt without a guide on land owned by or deeded land leased to such resident landowner.
" * * * Any person convicted of guiding or hunting contrary to the provisions of this section or of violating or permitting the violation of any of the game and fish laws of the state while acting as a guide, shall be fined not less than twenty-five dollars ($25.00) nor more than one hundred dollars ($100.00) or imprisoned in the county jail for not less than thirty (30) days nor more than three (3) months and it shall be mandatory on the part of the commission to revoke said resident guiding permit and refuse to issue a further permit for the succeeding year."

covering Albany, Platte, Goshen, Laramie, and the eastern half of Carbon Counties.

Although other constitutional questions were raised in the motion, appellant argues and relies only upon the Fourteenth Amendment and Art. 4, § 2, Art. 1, § 8, and Art. 6 of the Constitution of the United States, and Art. 21, § 26 of the Wyoming Constitution.

■ The State suggests that this matter is moot because § 23–54 has been repealed in its entirety and replaced with ch. 249, § 3, S.L. of Wyoming, 1973. This is not moot because of the judgment heretofore entered herein and the effect of our general savings clause, § 8–21, W.S.1957. The test is as set out in Belondon v. State, Wyo., 379 P.2d 828, 829, and cases cited therein, which recognized that a judgment is moot when it cannot be carried into effect—unlike this judgment. This appeal is in no particular changed or modified by such repeal and the amended statute, which was not before the trial court nor is it before us. We will not consider the provisions thereof as they do not apply herein. There might be some inference drawn that the legislature recognized certain weaknesses in this statute by the inclusion of all big game or trophy animals, which now include antelope, and the inclusion of wilderness areas in such enactment.

The State contends that Schakel has no constitutional right herein which has been infringed upon or denied. This position is based upon two premises, i. e., that the State being the owner of the wildlife is free to attach any such conditions it desires, and that a hunting license is a mere boon or privilege with the apparent inference there is no limit upon the power to attach conditions thereto. We have heretofore held that the validity of game and fish laws is subject to examination under the limitations of police power, Cross v. State, Wyo., 370 P.2d 371, 374, 93 A.L.R.2d 1357.

■ The State, conceding that proper classification is essential to the constitutionality of the statute, suggests that because this law applies equally to all nonresidents and appellant was not treated any differently than other nonresidents, this is not discriminatory. This does not end judicial inquiry but still leaves a burden upon the court to decide if the classifications created by the statute are proper in accomplishing their purpose under the equal protection clause, McLaughlin v. State of Florida, 379 U.S. 184, 85 S.Ct. 283, 288, 13 L.Ed.2d 222, on remand, Fla., 172 So.2d 460, and Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 778, 13 L.Ed.2d 675, on remand, Tex., 389 S.W.2d 945. The State cannot discriminate against citizens of other states merely because of their different citizenship, Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460, rehearing denied, 335 U.S. 837, 69 S.Ct. 12, 93 L.Ed. 389.

■ This law must be viewed as having been exercised under the general police power and in furtherance of the preservation, nurture, and management of the wildlife of the State, and that the State holds as a trustee rather than as owner of such wildlife. We have so held insofar as the waters of this State are concerned under our constitutional provision declaring waters to be the property of the State, Merrill v. Bishop, 74 Wyo. 298, 287 P.2d 620, 625, and Lake De Smet Reservoir Company v. Kaufmann, 75 Wyo. 87, 292 P.2d 482, 486. We think this most persuasive in face of the fact that the ownership theory as it affects wildlife is merely statutory. This trust relationship would give the State the power and the duty to preserve, protect, and nurture the wild game—not an arbitrary power to make discriminatory laws affecting the hunting thereof.

We have heretofore noted that police power is not unlimited but that it is subject to the limitations of due process, State v. Langley, 53 Wyo. 332, 84 P.2d 767, 770, and Cross v. State, supra. In the case of Bulova Watch Company v. Zale Jewelry Company, Wyo., 371 P.2d 409, 417, while

recognizing the large scope of police power, we clearly delineated certain necessary requirements for its validity:

" * * * the means adopted for its exercise must be reasonable and designed to accomplish the end in view; that the purposes for which the police power is invoked must have relation to the public weal, must be within the scope and in furtherance of that power, and the means adopted must be reasonable and appropriate for the accomplishment of and have a substantial connection with the end in view; * * * "

Under these clear guidelines and the record in this case we must examine this statute.

 The record in this case and the only evidence presented in connection with the application of this statute was by an officer of the Game and Fish Commission and was directed to the question of proper management and control of wildlife in his district, and that testimony shows that the section herein attacked had created serious problems and caused over hunting on adjoining Bureau of Land Management lands and had resulted since 1964 in the serious depletion of deer in areas adjoining the National Forest. The deer herds in the Iron Mountain, the Shirley Mountain areas of Medicine Bow, and the Saratoga Valley next to the forest had been over harvested, and other parts of the areas had been under harvested as a result of the operation of this statute. The State offered no evidence in this area whatever, suggesting by argument only that if the law be held void a heavier kill may be shifted to the forest lands because nonresidents may not wish to secure permission to hunt on private land and suggested a possibility of overkill upon them. This is based solely on inference and in no manner upon any evidence. From the record here before us this statute has operated not to subserve the purposes of the preservation and protection of wildlife but to its detriment. This fails the test we have heretofore recognized in connection with police power that the means adopted be reasonable and designed to accomplish the end in view and be appropriate for the accomplishment of this duty to protect and nurture the game, Bulova Watch Company v. Zale Jewelry Company, supra.

The State asserts another proposition to sustain this statute, which is the safety of the hunter. An examination of the statute demonstrates that it can have little if any relationship to such objective. The dangers to a hunter of antelope would seem as great as to a hunter of deer. We can see no manner in which it would be any less dangerous for an antelope hunter than a deer hunter in the same area at the same time. A wilderness area by its definition would be clearly a more dangerous area to one not acquainted with the area. See 16 U.S.C.A., ch. 23, § 1131(c), p. 178, 1973 Cum.P.P. Yet under this statute no guide would be required.

We think it also proper to judicially notice the fact that at least Sections 16 and 36 would be State lands lying within the boundaries of National Forests all over the State and that if safety were a prime factor these should have been included. The addition of the provision that any resident owner of a big game license may receive a guide license and guide two nonresident hunters without bond or without any qualifications whatsoever without remuneration therefor is impossible to reconcile with the theory of safety unless one indulges in the violent presumption that mere residence in this State makes a competent, knowing guide whether he be acquainted with the area or not. It may also be suggested that no reason appears why after two such guiding expeditions the resident licensed hunter would then become an incompetent guide and expose the third such nonresident hunter to danger.

This statute has been recognized as discriminatory in a most sensitive area, being confined in its operations to territory owned and administered by the federal government. This has not escaped the notice of the Public Land Review Commis-

sion, which recommended the revision of such discriminatory differences between residents and nonresidents and styles them as unjustified in noticing this statute.[2]

Because this statute created a discriminatory classification and because the record in this case demonstrates that it did not reasonably tend to accomplish or have any substantial connection with any of the purposes stated by the State and it is not rea-

sonable and appropriate for the accomplishment of these ends, this statute was therefore void.

Reversed and remanded with an order to set aside the fine and costs which were charged to the defendant.

McCLINTOCK, J., was not a member of the court at the time of the hearing of this case and took no part in this decision.

2. One-Third of the Nation's Land: A Report to the President and to the Congress by the Public Land Law Review Commission, pp. 174, 175 (June 20, 1970).