Calvin POWELL, Petitioner (Plaintiff),

v.

O.R. "Bud" DAILY, Frances Osborn, Ed P. Moriarity, Gene Harriet, Alice Hays, Denzel L. Coffey, and Dennis Daly, constituting the Wyoming Game and Fish Commission; and W. Donald Dexter, Director of the Wyoming Game and Fish Department, Respondents (Defendants).

No. 85–81.

Supreme Court of Wyoming.

Jan. 8, 1986.

John B. Rogers, Cheyenne, for petitioner.

A.G. McClintock, Atty. Gen., Lawrence J. Wolfe, Sr. Asst. Atty. Gen., and Marion

Yoder, Asst. Atty. Gen., Cheyenne, for respondents.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN and CARDINE, JJ.

ROSE, Justice.

This case is presented to us through the certification of a constitutional issue from the District Court of the First Judicial District in Wyoming. The question presented is whether § 23-2-402(a)(iii), W.S.1977, violates the Privileges and Immunities Clause of the United States Constitution. Because the challenged statute burdens a fundamental right, and because the degree of discrimination does not bear a close relation to any of the State's asserted reasons for the discriminatory treatment, we hold that § 23-2-402(a)(iii) impermissibly infringes upon the privileges and immunities of the citizens of states other than Wyoming.

## BACKGROUND

Petitioner Calvin Powell resides in Idaho Falls, Idaho. Powell applied to the Wyoming Game and Fish Commission for a guide license so that he could guide hunters and fishermen in Wyoming. Powell stated in his application that he had 30 years of hunting and fishing experience in Idaho, Montana, and Wyoming, and four years of hunting experience on the private ranches in Wyoming where he would be working as a guide.

The game and fish officer in Laramie County rejected Powell's application because Powell was not a resident of the state of Wyoming. Powell appealed this rejection to the Wyoming Game and Fish Commission (Commission) requesting a "waiver" of the residency requirement of § 23-2-402(a)(iii).

Section 23-2-402(a), W.S.1977, states:

"(a) No person shall engage in the business of guiding for any consideration or compensation without a professional guide's license. Any competent person who possesses the following qualifications shall upon payment of the license fee, receive a professional guide's license:

"(i) Citizen of the United States;

"(ii) At least eighteen (18) years of age;

"(iii) Resident of Wyoming;

"(iv) Knowledgeable of trophy care and appropriate game and fish laws;

"(v) Can satisfactorily pass a written or oral examination which is devised and administered at the discretion of the commission. The examination may include knowledge of the area, of hunting practices, of big game, or guiding practices and of game and fish laws."

The Commission refused to "waive" the statutory requirement and, relying upon our decision in *Belco Petroleum Corporation v. State Board of Equalization,* Wyo., 587 P.2d 204 (1978), refrained from passing upon the constitutional questions Powell attempted to raise concerning the statute.

Powell filed a petition for review in district court, which resulted in the court's upholding the Commission's refusal to consider the constitutional questions involved. Powell then filed a declaratory-judgment action in the same court seeking to have the court hold the residency requirement of § 23-2-402(a)(iii) to be void, and to order the Commission to disregard the requirement in acting upon his application. The district court certified the constitutional question involved to this court, after stipulation of the parties, pursuant to §§ 1-13-101 through 1-13-107, W.S.1977, and Rule 52(c), W.R.C.P.

The question to be answered is:

"Whether W.S. 23-2-402(a)(iii) which requires an applicant as a Game and Fish Guide to be a resident of the State of Wyoming for a period of one (1) year is contrary to constitutional right, power, or immunity (Article I, Sections 2 and 4 of the Wyoming Constitution and Article

---

* Retired November 1, 1985.

** Retired November 30, 1985.

IV, Section 2 and Amendment XIV of the United States Constitution) in that it infringes upon the applicant's rights of national citizenship and effectively restricts his right to interstate travel in pursuance of and in furtherance of his right to earn a living in his chosen field."

Powell claims that the statutory scheme which requires a guide to be a resident of Wyoming for not less than one year[1] restricts his fundamental constitutional right to pursue his chosen means of livelihood, establishes a discriminatory scheme which does not bear a close relation to a valid interest of the State, and relies upon a durational residency requirement. Thus, Powell contends that the statute is fatally deficient.

The State, on the other hand, maintains that "guiding" is not a fundamental right, but is instead merely a recreational privilege and that restricting that privilege to residents is a valid exercise of the State's police power. The State also urges that because protection of wildlife lies peculiarly within the ambit of the State's police power, we must give the legislature great latitude in determining what means are appropriate for wildlife protection.

### PRIVILEGES AND IMMUNITIES CLAUSE ANALYSIS

Article IV, § 2 of the United States Constitution provides in relevant part:

"The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

This court has recently dealt with another challenge to a state enactment under the Privileges and Immunities Clause in *State v. Antonich,* Wyo., 694 P.2d 60, 61–62 (1985).

"An examination of a state enactment to determine its validity under the privileges-and-immunities clause involves a two-step analysis. First, the reviewing court must determine whether the statute burdens a fundamental right or activity, since only those 'privileges' and 'immunities' which bear upon the concept of interstate harmony fall within the scope and purpose of the clause. *United Building and Construction Trades Council of Camden County and Vicinity v. Mayor and Council of the City of Camden,* 465 U.S. 208, ——, 104 S.Ct. 1020, 1027, 79 L.Ed.2d 249, 258–259 (1984); *Baldwin v. Fish and Game Commission of Montana,* 436 U.S. 371, 383–388, 98 S.Ct. 1852, 1860–1862, 56 L.Ed.2d 354 (1978); *Toomer v. Witsell,* 334 U.S. 385, 395–396, 68 S.Ct. 1156, 1161–1162, 92 L.Ed. 1460 (1948). Second, the court must examine the reasons for the discriminatory treatment to determine their validity and their relation to the degree of discrimination imposed by the statute. This portion of the test was developed by the United States Supreme Court in *Toomer v. Witsell,* supra:

" 'Like many other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. *Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. The inquiry must also, of course, be conducted with due regard for the principle that the States should have considera[ble] leeway in analyzing local evils and in prescribing appropriate cures.'* (Emphasis added.) 334 U.S. at 396, 68 S.Ct. at 1162.

---

**1.** The definition of resident for purposes of § 23–2–402(a)(iii) is found in § 23–1–102(a)(ix), W.S.1977, 1985 Cum.Supp:

" 'Resident' means a United States citizen who has been a resident of Wyoming for not less than one (1) year and who has not claimed residency elsewhere for any purpose during that one (1) year period immediately preceding the date of application for a license, permit or certificate. * * * "

"The Toomer court established that classifications based on non-citizenship cannot stand

"'* * * unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed.' 334 U.S. at 398, 68 S.Ct. at 1163."

### Fundamental Right

In *State v. Antonich,* supra, the statute before us was the Wyoming Preference Act of 1971, §§ 16–6–201 through 16–6–206, W.S.1977 (October 1982 Replacement), which required contractors to employ available qualified Wyoming laborers for public-works projects in preference to nonresident laborers. The State conceded, in *State v. Antonich,* supra, that the act burdened a fundamental right. 694 P.2d at 62. Here, however, the State claims that guiding, contrary to construction work, is not a fundamental right but is "merely a recreational privilege." We cannot agree with the State's conclusion.

■ "[T]he pursuit of a common calling is one of the most fundamental of those privileges protected by the [Privileges and Immunities] Clause." *Supreme Court of New Hampshire v. Piper,* —— U.S. ——, 105 S.Ct. 1272, 1277 n. 9, 84 L.Ed.2d 205 (1985). The clause "has long been held to apply to States' attempts to discriminate against nonresidents who seek to ply their trade interstate." Id. at 1281 (Rehnquist, J., dissenting). The Supreme Court has repeatedly found that " 'one of the privileges which the Clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State.' " Id. at 1276, quoting *Toomer v. Witsell,* 334 U.S. 385, 396, 68 S.Ct. 1156, 1162, 92 L.Ed. 1460 (1948). All of these statements make clear that pursuing a common calling, plying a trade, and doing business in another state are privileges protected by the clause.

The State maintains that guiding is not within any of the above activities but is,

instead, a recreation. According to the State, guiding is rarely a sole means of livelihood for Wyomingites, and part-time seasonal hunting and fishing guiding may well be considered a recreational activity. The State relies on *Baldwin v. Fish and Game Commission of Montana,* 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978), as support for this contention. In Baldwin the United States Supreme Court was confronted with the question of whether a hunting license fee seven and one-half times greater [2] for nonresidents than that charged for residents violated the Privileges and Immunities Clause. The Court stated:

" * * * [A] state's interest in its wildlife and other resources must yield when, without reason, it interferes with a nonresident's right to pursue a livelihood in a State other than his own, a right that is protected by the Privileges and Immunities Clause." 436 U.S. at 386, 98 S.Ct. at 1861.

However, the right to hunt for elk was no more than a chance to engage temporarily in a recreational activity in a sister state, and was not fundamental. Elk hunting was not a means of the nonresident's livelihood; there, the mastery of the animal and the trophy were the ends sought. *Baldwin v. Fish and Game Commission of Montana,* supra, 436 U.S. at 388, 98 S.Ct. at 1862.

Clearly the Supreme Court has held that the hunter is only engaging in a recreational activity and that receiving such an opportunity is not a fundamental right. On the other hand, pursuing a common calling, plying a trade, and doing business in another state are fundamental rights protected by the clause. The State would have this court hold that the guide is a hunter, not a businessperson.

■ The question of whether "guiding" is within the ambit of a common calling, trade or business or whether it is merely recreational can be answered by reading

---

**2.** This difference in fees was based on a combination license; the nonresident who wished to hunt only elk paid 25 times as much as the resident. 436 U.S. at 374, 98 S.Ct. at 1855.

the statute here in question. Section 23–2–402(a) provides that "[n]o person shall engage in *the business of guiding for any consideration· or compensation* without a professional guide's license." (Emphasis added.) One who wishes to "guide" friends in Wyoming for recreation need not be concerned with § 23–2–402, W.S.1977. Only those who seek to guide for compensation, those engaged in "the business of guiding," are prohibited by the statute from doing so because they are nonresidents. Although the hunter is engaged temporarily in a recreational activity, the person guiding him for compensation is engaged in a business—his livelihood. The guiding dealt with by this statute is a business and is a fundamental right protected by the Privileges and Immunities Clause.

### The Statutory Scheme of Discrimination

Even where fundamental rights are involved, not all residency classifications are invalid. The statute burdening a fundamental right "offends the privileges-and-immunities clause unless a close link exists between valid reasons for the Act and the discrimination practiced." *State v. Antonich,* supra, 694 P.2d at 62. In *State v. Antonich,* supra, we found that the Wyoming Preference Act of 1971 precisely fit the particular evil identified by the State. Here we cannot say that the statutory scheme of discrimination against nonresidents precisely fits any peculiar evil identified by the State.

The State claims that residents are simply much more likely to know the rough country than are visiting guides, and that this is the most compelling reason for discriminatory treatment. The State also asserts that residents are far more familiar with local laws, which as guides they are required to observe, and that there is no particular need to increase the number of guides in Wyoming. We do not believe that these bald assertions by the State can support the necessary finding that nonresidents are a peculiar source of evil.

Stating that there is no particular need to increase the number of guides in Wyoming provides no support for this statute. If the State is claiming that there is too much hunting pressure on our wildlife, clearly nonresident guides cannot be the source of such an evil when they are prohibited from operating in the state. Certainly the State cannot mean that it is seeking to protect resident guides from competition provided by nonresident guides. "The Privileges and Immunities Clause was designed primarily to prevent such economic protectionism." *Supreme Court of New Hampshire v. Piper,* supra, 105 S.Ct. at 1279 n. 18. We do not see how nonresidents present a peculiar source of the evil of too many guides, if such an evil does in fact exist.

The State also asserts that residents are far more familiar with local laws which, as guides, they are required to observe. Guides are also required to report violations of the game and fish laws.[3] The State relies on no evidence to support its claim that nonresidents are less likely to know or obey the laws of our state. Montana rejected the similar contention that a statute prohibiting nonresidents from hunting without a guide promoted adherence to the game laws. *State v. Jack,* 167 Mont. 456, 539 P.2d 726, 729 (1975). More recently the Montana court refused to accept the claim that nonresident outfitters were any less respective of property rights, or any less subject to law enforcement procedures, than resident outfitters. *Godfrey v. Montana State Fish & Game Commission,* Mont., 631 P.2d 1265, 1268 (1981). We likewise cannot assume that resident guides are any more likely to obey our laws than nonresident guides, and we cannot allow this statute to discriminate against nonresidents based upon such an assumption.

---

**3.** Section 23–2–403, W.S.1977, provides that: "Every guide shall promptly report to the department or any game warden each violation of this act or order of the commission by any person guided."

Even if we assume that nonresident guides would present a peculiar evil because they are usually less likely to know the game and fish laws of our state, flatly prohibiting all nonresidents from guiding does not precisely fit the perceived evil. Section 23–2–402(a)(iv) provides that the applicant must be "[k]nowledgeable of trophy care and appropriate game and fish laws." The statute also provides for an examination which may consist, in part, of questions relating to game and fish laws. Section 23–2–402(a)(v). The nonresident who passes such an examination leaves little of the claim that he does not know the appropriate game laws. And, as previously stated, there is nothing to indicate that a nonresident guide knowledgeable of our game laws is more likely than a resident guide to violate those laws.

The State claims that the statute promotes safety because residents are simply more likely to know the rough country than are nonresident guides. We repeat Justice Guthrie's words that it is a "violent presumption that mere residence in this State makes a competent, knowing guide whether he be acquainted with the area or not." *Schakel v. State*, Wyo., 513 P.2d 412, 415 (1973). In Schakel, this court struck down a statute which required a nonresident to employ a guide while hunting on national land in Wyoming despite the contention that such a statute promoted the State's interest in the safety of nonresident hunters.

We still believe that mere residence in this state does not make a competent guide. If the State's position were to be upheld, a person born and raised in New York City who moved to Cheyenne over a year ago could qualify for a guiding license, while Mr. Powell, who has hunted and fished in Idaho, Montana and Wyoming for 30 years, cannot qualify because he makes his home in Idaho Falls. The State cannot seriously contend that merely living in Cheyenne for a year makes a prospective guide a better safety risk when guiding hunters in the rugged wilderness areas of our state.

The statute provides that an applicant can be required to "satisfactorily pass a written or oral examination which * * * may include knowledge of the area, of hunting practices, of big game, or guiding practices and of game and fish laws." Section 23–2–402(a)(v). After requiring an applicant to pass an examination which includes questions having to do with the knowledge of the area, it seems absurd to claim that, because the applicant is a nonresident, he is a safety threat as a guide because he does not know the area.

It is proper to recognize that there exist alternative, less discriminatory means of achieving the State's purported goals of ensuring safety and compliance with the game laws. See *Supreme Court of New Hampshire v. Piper*, supra, 105 S.Ct. at 1279; *Toomer v. Witsell*, supra, 334 U.S. at 398–399, 68 S.Ct. at 1163–1164. An objective application requirement such as testing is an alternative means to accomplish the ends sought by the State. As previously noted, the statute already provides for this objective testing to ensure that the applicant knows the game laws of our state and the area where he will be guiding. Such less restrictive means should be used when available.

### State Resources

■ The State correctly notes that this court has proclaimed that wildlife is held by our state as a trustee. *Schakel v. State*, supra. Because of this relationship, it is claimed that the state not only has a right but an obligation to use the resources for the benefit of its people. *Kleppe v. New Mexico*, 426 U.S. 529, 96 S.Ct. 2285, 49 L.Ed.2d 34, reh. denied 429 U.S. 873, 97 S.Ct. 189, 50 L.Ed.2d 154 (1976). A state's duty or right to use these resources for the benefit of its people, however, does not mean that laws enacted in connection with these resources are free from constitutional scrutiny.

In *Schakel v. State*, supra, 513 P.2d at 414, we said:

"* * * This trust relationship would give the State the power and the duty to

preserve, protect, and nurture the wild game—not an arbitrary power to make discriminatory laws affecting the hunting thereof."

Likewise, the United States Supreme Court has noted that state ownership does not place a statute completely beyond the Privileges and Immunities Clause. *Hicklin v. Orbeck*, 437 U.S. 518, 529, 98 S.Ct. 2482, 2489, 57 L.Ed.2d 397 (1978). Speaking of a state's relation to its natural resources, the United States Supreme Court has stated that the ownership theory is but a fiction expressing in legal shorthand the importance to its people of a state's power to preserve and regulate the exploitation of an important resource.

" * * * [T]here is no necessary conflict between that vital policy consideration and the constitutional command that the State exercise that power, like its other powers, so as not to discriminate without reason against citizens of other States." *Toomer v. Witsell*, supra, 334 U.S. at 402, 68 S.Ct. at 1165.

" * * * [A] State's interest in its wildlife * * * must yield when, without reason, it interferes with a nonresident's right to pursue a livelihood in a State other than his own * * *." *Baldwin v. Fish and Game Commission of Montana*, supra, 436 U.S. at 386, 98 S.Ct. at 1861.

We recognize the importance of scarce resources such as elk, moose and other game animals to both Wyoming and the entire country. The importance of the resource and the State's duty to use such resources for the benefit of its people cannot, however, change the fact that this statute discriminates against nonresidents when they have not been identified as a peculiar source of evil. We have previously said that classifications based on non-citizenship cannot stand

" ' * * * unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed.' [*Toomer v. Witsell*, supra,] 334 U.S. at 398, 68 S.Ct. at 1163." *State v. Antonich*, supra, 694 P.2d at 62.

Even if the State has pointed to a particular evil caused by nonresidents, the statute prohibiting all nonresidents from guiding in Wyoming does not precisely fit any evil identified. The Supreme Court of Montana dealt with a similar statute requiring outfitters to be residents of Montana. That court found that such classification did not even bear a reasonable relationship to a legitimate governmental interest. *Godfrey v. Montana State Fish & Game Commission*, supra. We believe that the statute in the present case burdens a fundamental right and so must overcome even a stricter test than that applied by the Montana court. A statute burdening a fundamental right "offends the privileges-and-immunities clause unless a close link exists between valid reasons for the Act and the discrimination practiced." *State v. Antonich*, supra, 694 P.2d at 62. The statute fails to pass this test.

■ Section 23–2–402(a)(iii) burdens a fundamental right. Because it does so and because the degree of discrimination does not bear a close relation to any of the State's asserted reasons for the discriminatory treatment, we hold that the statute violates the Privileges and Immunities Clause of Art. IV, § 2 of the United States Constitution.

Remanded for further proceedings consistent with this opinion.

ROONEY, Justice, dissenting, with whom BROWN, Justice, joins.

I agree with the general law set forth in the majority opinion, but I do not believe that we have sufficient facts before us upon which to apply such law. Accordingly, the opinion in this case is an advisory one and, thus, is improper. The matter should be remanded to the district court for the purpose of an evidentiary hearing to establish the facts, if such exist, upon which a determination of a constitutional question will be dispositive.

Rule 52(c), W.R.C.P., provides:

"In all cases in which a district court reserves an important and difficult constitutional question arising in an action

or proceeding pending before it, the district court, before sending the question to the Supreme Court for decision, shall (1) dispose of all necessary and controlling questions of fact and make special findings of fact thereon, and (2) state its conclusions of law on all points of common law and of construction, interpretation and meaning of statutes and of all instruments necessary for a complete decision of the case. No constitutional question shall be deemed to arise in an action unless, after all necessary special findings of fact and conclusions of law have been made by the district court, a decision on the constitutional question is necessary to the rendition of final judgment. The question reserved shall be specific, and shall identify the constitutional provision to be interpreted. The special findings of fact and conclusions of law required by this subdivision of this rule shall be deemed to be a final order from which either party may appeal, and such appeal may be considered by the Supreme Court simultaneously with the reserved question."

Pursuant to this subsection, the district court must dispose of all necessary and controlling questions of fact and state its conclusions of law on all points of construction, interpretation and meaning of statutes. *Griffith ex rel. Workmen's Compensation Department v. Stephenson,* Wyo., 494 P.2d 546 (1972); *Harding v. State,* Wyo., 478 P.2d 64 (1970).

The power of the Supreme Court to decide reserved constitutional questions does not authorize the court to render advisory opinions. *State v. Rosachi,* Wyo., 549 P.2d 318 (1976); *Tobin v. Pursel,* Wyo., 539 P.2d 361 (1975).

In this case, the certification from the district court contains a section captioned "Statement of Facts," but it is no more than a recital of the previous procedure in the matter; i.e., plaintiff submitted his application for a guide license to the game warden; it was refused because plaintiff was not a resident of Wyoming as required by statute; the refusal of the game warden

was appealed to the Wyoming Game and Fish Commission; the commission, after consultation with the Attorney General's office, supported the decision of the game warden; an appeal of the administrative ruling to the district court resulted in affirmance of the decision of the Wyoming Game and Fish Commission; plaintiff filed a declaratory judgment action; and the question before us was certified to this court. The trial court did not make any conclusions of law.

The record also contains findings by the trial court which recite:

"THIS MATTER having come before the Court upon the Stipulation of the parties to reserve a constitutional question to the Wyoming Supreme Court pursuant to the provisions of Rule 52(c) of the Wyoming Rules of Civil Procedure, the Court does find as follows:

"1. The parties have stipulated to all necessary and controlling questions of fact;

"2. The only question of law necessary for a complete decision of the case is the constitutional question being reserved to the Wyoming Supreme Court;

"3. A decision on the constitutional question is necessary to the rendition of final judgment."

However, the only stipulation in the record reads:

"The parties to this matter hereby stipulate that it is appropriate to reserve the constitutional question presented herein to the Supreme Court of the State of Wyoming and, for that reason, that Petitioner's Motion to that effect should be granted by the Court without further hearing."

The complaint for the declaratory judgment also makes only a recital of previous procedures taken in the case. Through denials, the answer places in issue the refusal by the Wyoming Game and Fish Commission to accept plaintiff's request for a guide license. The majority opinion reflects the undecided factual issue.

"Powell claims that the statutory scheme which requires a guide to be a resident of Wyoming for not less than one year restricts *his* fundamental constitutional right to pursue *his* chosen means of livelihood, establishes a discriminatory scheme which does not bear a close relation to a valid interest of the State,[1] and relies upon a durational residency requirement. Thus, Powell contends that the statute is fatally deficient.

"The State, *on the other hand,* maintains that 'guiding' is not a fundamental right, but is instead merely a recreational privilege and that restricting that privilege to residents is a valid exercise of the State's police power. The State also urges that because protection of wildlife lies peculiarly within the ambit of the State's police power, we must give the legislature great latitude in determining what means are appropriate for wildlife protection." (Emphasis added and footnote omitted.)

The factual condition behind these two contentions has not been resolved.

There is no finding by the trial court that guiding is plaintiff's "chosen means of livelihood." Plaintiff's application for a guide license (attached to the complaint) reflects that he will guide for Bolten Ranch Outfitters and that he has "4 years hunting experience on private ranches in Wyoming, where I will be working." The obvious fact questions then are whether the "working" is other than "guiding," and, if not, what the "means of livelihood" is during the time other than that in the short hunting season each year.

Included in the correspondence presented during the review of the administrative action was a letter from plaintiff's attorney to the senior assistant attorney general in which it was represented that plaintiff was "involved in the 'blue print' business" in Idaho Falls, Idaho. It also stated that he " * * * spends a considerable amount of his time (upwards of six months each year) in the State of Wyoming actively involved in hunting and fishing activities which he pursues for compensation. * * *"

The question is not whether plaintiff has been violating the law for the past activities pursued for compensation, but whether plaintiff desires the guide license as a means of livelihood. The "business of guiding for any consideration or compensation" as recited in the statute does not mean that one receiving a guide license is using it to provide his livelihood. He may never actually use it, or he may use it primarily as a recreational activity which provides a little "pocket money." Many people use an avocation as a recreational activity. If plaintiff is doing so here, he is not concerned with a fundamental right and lacks the required standing to test the constitutionality of the statute. We should have the facts in this respect before addressing the issue certified to us. Perhaps such facts would make proper the result reached by the majority opinion. Justice White wrote in an opinion concurring in the result in *Supreme Court of New Hampshire v. Piper,* —— U.S. ——, 105 S.Ct. 1272, 1281, 84 L.Ed.2d 205 (1985):

"Respondent Piper lives only 400 yards from the New Hampshire border. She has passed the New Hampshire bar and intends to practice law in New Hampshire. Indeed, insofar as this record reveals, the only law office she will maintain is in New Hampshire. But because she will commute from Vermont rather than reside in New Hampshire, she will not be allowed to practice in the latter state.

"I have no doubt that the New Hampshire residency requirement is invalid *as applied to respondent Piper.* Except for the fact that she will commute from Vermont, she would be indistinguishable from other New Hampshire lawyers. There is every reason to believe that she will be as able as other New Hampshire lawyers to maintain professional competence, to stay abreast of local rules and procedures, to be available for sudden hearings, and to satisfy any require-

1. The majority opinion refers to defendants as the "State."

ments of a member of the New Hampshire bar to perform pro bono and volunteer work. It does not appear that her nonresidency presents a special threat to any of the state's interests that is not shared by lawyers living in New Hampshire. Hence, I conclude that the Privileges and Immunities Clause forbids her exclusion from the New Hampshire bar. "The foregoing is enough to dispose of this case. *I do not, and the Court itself need not, reach out to decide the facial validity of the New Hampshire residency requirement.* I would postpone to another day such questions as whether a state may constitutionally condition membership in the New Hampshire bar upon maintaining an office for the practice of law in the state of New Hampshire.

"I concur in the judgment invalidating the New Hampshire residency requirement as applied to respondent Piper." (Emphasis added.)

We do not pass on constitutional questions until matters of fact or of statutory construction which may dispose of the case have been decided by the trial court. *Boode v. Allied Mutual Insurance Company,* Wyo., 458 P.2d 653 (1969); *McFarland v. City of Cheyenne,* 48 Wyo. 86, 42 P.2d 413 (1935); *In re Gillette Daily Journal,* 44 Wyo. 226, 11 P.2d 265 (1932), as supplemented by 45 Wyo. 173, 17 P.2d 665 (1933).

Finally, I direct attention to the nature of this action, which is one for a declaratory judgment. This fact does not circumvent the proscription against advisory opinions or the requirement of justiciable controversy. *Aetna Casualty and Surety Company v. Langdon,* Wyo., 624 P.2d 240 (1981); *Witzenburger v. State ex rel. Wyoming Community Development Authority,* Wyo., 577 P.2d 1386 (1978); *Police Protective Association of Casper v. City of Casper,* Wyo., 575 P.2d 1146 (1978).

I would return this case to the district court for reception of evidence and findings thereon relative to the need *on the part of plaintiff* for a guide license to enable *him*

to exercise *his* fundamental right to earn a livelihood rather than a desire on his part to use it primarily to further his recreational activity. I would refuse to answer the certified question in a vacuum. After the facts have been determined by the trial court, the question can properly be certified.