

# THE ATTORNEY GENERAL
## OF TEXAS

January 8, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Mike Driscoll             Opinion No. JM-616
Harris County Attorney
1001 Preston, Suite 634             Re:  Constitutionality of article
Houston, Texas   77002             601g, V.T.C.S., regarding out-of-
                                    state bidders on public contracts,
                                    and related questions

Dear Mr. Driscoll:

Your office has asked whether article 601g, V.T.C.S., enacted in 1985 (Acts 1985, 69th Leg., ch. 83, at 449) is constitutional. Subsections (b) and (c) of section 1 of the statute provide:

> (b)  The state or a governmental agency of the state may not award a contract for general construction, improvements, services, or public works projects or purchases of supplies, materials, or equipment to a nonresident bidder unless the nonresident's bid is lower than the lowest bid submitted by a responsible Texas resident bidder by the same amount that a Texas resident bidder would be required to underbid a nonresident bidder to obtain a comparable contract in the state in which the nonresident's principal place of business is located.

> (c)  This section does not apply to a contract involving federal funds.

A "nonresident bidder" and a "Texas resident bidder" are defined by subsections (a)(2) and (a)(3) of section 1 to mean:

> (2)  'Nonresident bidder' means a bidder whose principal place of business is not in this state, but excludes a contractor whose ultimate parent company or majority owner has its principal place of business in this state.

> (3)  'Texas resident bidder' means a bidder whose principal place of business is in this state, and includes a contractor whose ultimate parent company or majority owner has its principal place of business in this state.

V.T.C.S. art. 601g, §1.

Although the clause qualifying the terms "nonresident bidder" and "Texas resident bidder" is clumsy, we believe its meaning can be fairly ascertained. In each definition, respectively, the clause excludes or includes "a contractor whose ultimate parent company or majority owner has its principal place of business in this state."

The statute looks to the reality of control, not to legal fictions. Cf. Culcal Stylco, Inc. v. Vornado, Inc., 103 Cal. Rptr. 419 (Cal. App. - [2nd Dist.] 1972). The phrase, "ultimate parent company or majority owner," is awkward, but clearly has reference to the person or entity ultimately having the power to control the business activities of the contractor/bidder, either directly or indirectly. The relationship of subsidiary and parent corporations is discussed in Rimes v. Club Corporation of America, 542 S.W.2d 909 (Tex. Civ. App. - Dallas 1976, writ ref'd n.r.e.), and International Order of Twelve Knights and Daughters of Tabor v. Fridia, 91 S.W.2d 404 (Tex. Civ. App. - Waco 1936, no writ). See 15 Tex. Jur. 3d Corporations §§13, 14 (1981).

Similarly, the term "principal place of business" as used in article 601g does not necessarily refer to the place of incorporation or organization of a company, or to the residence of its majority owner. It means the place where the person, whether natural or artificial, maintains offices and transacts business, i.e., where the person's business affairs are conducted. See National Truckers Service, Inc. v. Aero Systems, Inc., 480 S.W.2d 455 (Tex. Civ. App. - Fort Worth 1972, writ ref'd n.r.e.). The "principal place of business" can sometimes be different from the place of the person's general offices, see Dryden v. Ranger Refining & Pipe Line Co., 280 F. 257 (5th Cir. 1922), but when a business operates in a number of states and no one state is clearly the state in which its activities are principally conducted, the state from which centralized general supervision is exercised may be considered the location of the "principal place of business," particularly if a substantial part of its operations are also conducted there. See Jackson v. Tennessee Valley Authority, 462 F. Supp. 45 (D.C. Tenn. 1978). Cf. In re Commonwealth Oil Refining Co., Inc., 596 F.2d 1239 (5th Cir. 1979).

The effect of this statute is to give a preference to "Texas resident bidders" if the home state of a "nonresident bidder" gives a preference to its residents in similar situations. Cf. V.T.C.S. art. 601b, §3.28; art. 2367a. The Bill Analysis prepared prior to its enactment by the House Committee on Business and Commerce (H.B. No. 620, 69th Leg., (1985)) describes its purpose as one to

> establish a reciprocity requirement in the award
> of state contracts so that bidders from other
> states would face the same underbid requirement in
> Texas contracts that Texas bidders would

experience when bidding on comparable contracts in those states.

The statute is purely retaliatory in nature, intended to induce other states to avoid penalizing Texas bidders.[1]  If the home state of a nonresident bidder does not discriminate against Texas-based bidders, the statute has no effect.

Paraphrased, the questions you pose are:

1. Is article 601g, V.T.C.S., constitutional?

2. If so, what is the definition of 'principal place of business?'

3. Which states currently impose similar penalties on bidders from Texas?

Attacks against local statutes preferring resident contractors or workers over nonresidents on public works projects are usually based on three federal constitutional grounds:  (1) the Privileges and Immunities Clause of article 4, section 2, of the United States Constitution;[2] (2) the Equal Protection Clause of the Fourteenth Amendment;[3] and (3) the Commerce Clause of article 1, section 8.[4]  In our opinion, the Texas statute is not vulnerable on such grounds.

----

1. Retaliatory statutes are not a recent invention.  See Board of Insurance Commissioners v. Prudential Fire Insurance Co., 167 S.W.2d 578 (Tex. Civ. App. - Austin 1942, writ ref'd).  Cf. 30 A.L.R. 4th 873, Construction, Application, and Operation of State "Retaliatory" Statutes Imposing Special Taxes or Fees on Foreign Insurers Doing Business Within the State (1984).

2. "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

3. "Nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws."

4. "The Congress shall have Power . . . to regulate Commerce . . . among the several States. . . ."

When a state acts in a proprietary capacity as a market partici-
pant rather than as a "market regulator," it is not subject to the
limitations of the Commerce Clause, even if it uses its position to
favor its own citizens over others. White v. Massachusetts Council of
Construction Employers, Inc., 460 U.S. 204 (1983); Reeves, Inc. v.
State, 447 U.S. 429 (1980); Hughes v. Alexandria Scrap Corp., 426 U.S.
794 (1976); International Organization of Masters, Mates & Pilots v.
Andrews, 626 F.Supp. 1271 (D.C. Alaska 1986). Here, through the medium
of article 601g, the state of Texas acts in its proprietary capacity
as a market participant and not as a market regulator.[5] Thus, article
601g does not violate the Commerce Clause. Cf. Jefferson County Phar-
maceutical Assn., Inc. v. Abbott Laboratories, 460 U.S. 150 (1983).

With respect to the Equal Protection Clause, the statute is to
be considered valid so long as there is a rational basis to justify it
unless it burdens a fundamental right or concerns a suspect classi-
fication. If it does burden such a right or concern such a class, it
is subject to a stricter standard. Cf. Martinez v. Bynum, 461 U.S.
321 (1983).

Bidders on state or local government contracts do not comprise a
suspect classification, and article 601g does not significantly impact
a fundamental right. It imposes no durational "residency" requirement
that might implicate the fundamental right to "travel." So far as the
statute is concerned, the length of time a locale has been the
"principal place of business" is unimportant. Cf. McCarthy v.
Philadelphia Civil Service Commission, 424 U.S. 645 (1976). Although
a right to pursue employment in a chosen profession may be considered
fundamental for some purposes, there is no fundamental right to
government employment for purposes of the Equal Protection Clause.
Massachusetts Board of Retirement v. Murgia, 427 U.S. 307 (1976).

A rational basis for the statute will suffice to sustain it
against an Equal Protection attack. As a means to accomplish the
legitimate, stated object of the legislation (to induce other states
to forego discriminatory penalties against Texas-based businesses in
similar circumstances), it is reasonable. Western and Southern Life
Insurance Co. v. State Board of Equalization, 451 U.S. 648 (1981).
Cf. Metropolitan Life Insurance Co. v. Ward, 470 U.S. 869 (1985).
Article 601g does not violate the Equal Protection Clause.

---

5. The article 601g, section 1(a)(1) definition of "governmental
agency of the state" includes local government units such as cities,
counties and school districts as well as statewide agencies and
departments of the state government. The inapplicability of the
Commerce Clause to the activities of a state as a market participant
applies not only to the use of its own funds, but to those it has the
authority to administer. White, supra. Inasmuch as the legislature
has the power to direct the expenditures and procurement practices of
such local governmental units as well as statewide agencies, we
believe the state acts as a market participant when it does so. See
40 Tex. Jur. 2d Rev., part 1 Municipal Corporations §420 (1976).

In considering the Privileges and Immunities Clause as it relates to article 601g, the first observation is that corporations are not "citizens" within the protection of that constitutional provision. Western and Southern Life Insurance Co. v. State Board of Equalization, supra. As to natural persons, analysis involves a two-step process. United Building and Construction Trades Council v. Mayor and Council of the City of Camden, 465 U.S. 208 (1984).

The first step is to determine whether the statute burdens a privilege or immunity protected by the clause, i.e., one fundamental to the promotion of interstate harmony. Assuming it does, the second step is to determine whether there is a substantial reason for the difference in treatment. Discrimination against nonresidents does not violate the Privileges and Immunities Clause where there is a substantial reason for the difference and it bears a substantial relationship to the state's objective. Supreme Court of New Hampshire v. Piper, 470 U.S. 274.

In the City of Camden case, supra, the United States Supreme Court considered an ordinance of the city that required at least forty percent (40%) of the employees of contractors and subcontractors working on city construction projects to be Camden residents. The Court held that "the pursuit of a common calling" is one of the most fundamental of those privileges protected by the Privileges and Immunities Clause and, though the ordinance was not violative of the Commerce Clause because of the proprietary nature of the regulation, perhaps it could offend the Privileges and Immunities Clause, depending on unascertained facts. The cause was remanded to determine those facts.

In the course of discussing the factors to be considered in deciding whether a substantial reason for the statutory difference existed in the City of Camden case, and whether it bore a substantial relationship to the state's objective sufficient to avoid a Privileges and Immunities Clause violation, the Court said:

> The fact that Camden is expending its own funds or funds it administers in accordance with the terms of a grant is certainly a factor -- perhaps the crucial factor -- to be considered in evaluating whether the statute's discrimination violates the Privileges and Immunities Clause.

465 U.S. at 221.

The Texas statute at issue here has a scope more restricted than the Camden ordinance. It does not penalize bidders whose workforce consists of out-of-state residents. Nonresident workers on state jobs are not subjected to discrimination by the statute. It discriminates only against bidders (including natural persons residing in Texas and corporations organized here) with their principal places of business

in states that discriminate against Texas-based businesses in similar situations. Cf. Robison v. Francis, 713 P.2d 259 (Alaska 1986).

For purposes of this opinion, we assume without deciding that the opportunity of "nonresident" natural persons to bid on a public contract in Texas is a privilege fundamental to the promotion of interstate harmony and that a burden on that privilege is unconstitutional unless there is a substantial reason for it and it bears a substantial relationship to the state's objective. Cf. Powell v. Daily, 712 P.2d 356 (Wyo. 1986); International Organization of Masters, Mates & Pilots v. Andrews, supra. In our opinion the burden imposed by the Texas statute meets those tests.

The existence (or possible future existence) of statutes in other states that discriminate against Texas-based businesses in the award of public contracts is a substantial reason for the enactment of article 601g, V.T.C.S., and the burden the statute casts upon bidders from states that do practice such discrimination against Texas-based businesses clearly bears a substantial relationship to the state's objective. Cf. Western and Southern Life Insurance Co. v. State Board of Equalization, supra. Article 601g restricts only the expenditure of public funds, and, for Privilege and Immunities Clause purposes, affects only nonresidents who can be said to constitute a peculiar source of the evil at which the statute is aimed -- natural persons for whose benefit the other states discriminate and who, politically, are in a position to actively persuade the legislatures of the states in which their principal places of business are located to desist from discriminating in their favor against Texas-based businesses.

We advise that article 601g, V.T.C.S., is constitutional. We have earlier addressed your "principal place of business" question. Your final request asks us to identify those states currently imposing similar penalties "on bidders from Texas."

We must decline to embark on an open-ended search through the legislative annals of other states. If your research identifies another state's statute about the effect of which you have doubt after analyzing it, you may ask our help in resolving the doubt.

## S U M M A R Y

Article 601g, V.T.C.S., a retaliatory bidding statute, is constitutional. Within the scope of the statute, "principal place of business" means the place where the person, whether natural or artificial, maintains offices and transacts business, i.e., where the person's business affairs are conducted.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Bruce Youngblood
Assistant Attorney General