The STATE of Wyoming, Plaintiff,

v.

Arlad SHUNNESON, Defendant.

No. 87–114.

Supreme Court of Wyoming.

Oct. 14, 1987.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Sr. Asst. Atty. Gen., Robert A. Nicholas, Asst. Atty. Gen., Thomas E. Callison, Legal Intern, for plaintiff.

John B. Rogers of Rogers & McElhaney, Cheyenne, for defendant.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

Appellant, a Colorado resident, pled guilty to violating § 23–2–404(a), W.S.1977 (outfitting without a license). Appellant reserved his right to challenge by appeal the constitutionality of the statute which requires that an applicant be a resident of the state of Wyoming for a period of one year to obtain an outfitter license. The appeal is before us upon the brief of appellant and confession of error by appellee.

Appellant states the issue presented for review as:

"Whether W.S. 23–2–404 which requires an applicant as a game and fish outfitter to be a resident of the state of Wyoming for a period of one (1) year is contrary to constitutional right, power, or immunity (Article IV, Section 2 and Amendment 14 of the United States Constitution) in that it infringes upon the applicant's rights of national citizenship and effectively restricts his right to interstate travel in pursuance of and in furtherance of his right to earn a living in his chosen field."

We reverse.

### FACTS

Appellant, Arlad Shunneson, a Colorado resident who is self-employed as a big game hunting and fishing outfitter and guide, had made numerous requests to the Wyoming Game and Fish Commission and the attorney general's office for information and applications for outfitter and guide licenses from the state of Wyoming. Each request was denied solely because appellant was not a Wyoming resident, despite his fulfilling all the remaining statutory requirements for obtaining the licenses and being available to complete the requisite examination. Appellant, without being licensed as an outfitter by the state of Wyoming, provided in Wyoming semi-permanent camp outfitting services for persons hunting antelope and other big game animals. He was arrested in October 1986, in Natrona County, Wyoming, for alleged violation of §§ 23–2–402(a), W.S.1977 (guiding without a license), and 23–2–404(a), W.S.1977 (outfitting without a license). Count one, alleging violation of the statute prohibiting guiding without a license, was dismissed by motion prior to trial, leaving appellant charged only with outfitting without a license contrary to subsections (a) and (d)(iii) of § 23–2–404, W.S.1977, which provide:

"(a) No person shall engage in the business of outfitter or outfitting without applying for and receiving a big game animal outfitter's license, a deer-antelope outfitter's license, or a fishing outfitter's license, except that a resident landowner may outfit on lands owned by him without license. Each application for an outfitter's license shall be in the name of one (1) individual who possesses the necessary qualifications. * * *

\* \* \* \* \* \*

"(d) Any competent person of good moral character, who possesses the following qualifications shall upon payment of the proper fee, receive a big game animal outfitter's license, deer-antelope outfitter's license or fishing outfitter's license:

\* \* \* \* \* \*

"(iii) Resident of Wyoming."

Section 23–1–102(a)(ix), W.S.1977, defines the term "resident":

" 'Resident' means a United States citizen who has been a resident of Wyoming for not less than one (1) year and who has not claimed residency elsewhere for any purpose during that one (1) year period immediately preceding the date of application for a license, permit or certificate."

Thus, residency for a period of one year is one of the necessary qualifications for issuance of an outfitter's license by the state of Wyoming.

Pursuant to agreement with the prosecution, appellant pled guilty to the charge of outfitting without a license. An order was entered by the Natrona County Court accepting the plea, acknowledging the reservation of appellant's right to challenge the constitutionality of the statute as was done in *Armijo v. State,* Wyo., 678 P.2d 864 (1984), and assessing a fine and court costs of $310.00. Appellant appealed to the Natrona County District Court, which certified the question of the statute's constitutionality to this court.

■ The right to pursue one's chosen means of livelihood is one of the most fundamental privileges protected by the Privileges and Immunities Clause of the United States Constitution. *Supreme Court of New Hampshire v. Piper,* 470 U.S. 274, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985). The Privileges and Immunities Clause of the United States Constitution provides in pertinent part:

"The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

■ Pursuant to this clause, a state may not discriminate against citizens of other states merely because of their different citizenship. *Toomer v. Witsell,* 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948). When addressing a fundamental right, a state may discriminate against a nonresident only where there is a substantial or compelling reason for the disparate treatment and the discrimination bears a close or substantial relationship to the state's objective. *Supreme Court of New Hampshire v. Piper,* supra. See also *Baldwin v. Fish and Game Commission of Montana,* 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978).

As the Toomer Court stated:

"Like many other constitutional provisions, the privileges and immunities clause is not an absolute. It does bar discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States. But it does not preclude disparity of treatment in the many situations where there are perfectly valid independent reasons for it. Thus the inquiry in each case must be concerned with whether such reasons do exist and whether the degree of discrimination bears a close relation to them. The inquiry must also, of course, be conducted with due regard for the principle that the States should have considerable leeway in analyzing local evils and in prescribing appropriate cures." (Footnote omitted.) 334 U.S. at 396, 68 S.Ct. at 1162.

This discrimination-because-of-nonresidency question was before us in *Powell v. Daily,* Wyo., 712 P.2d 356 (1986), wherein an Idaho resident applied for and was denied a license which would have enabled him to guide hunters and fishermen in Wyoming. The game and fish officer rejected Powell's application pursuant to § 23–2–402(a)(iii), W.S.1977, because he had not been a resident of the state of Wyoming for a period of one year.

The State of Wyoming contended that a residency requirement would assure knowledge of "rough country," of state laws, and the observance of them. We held that residency did not assure the desired objectives nor correct any perceived evil, and the denial of Powell's application under § 23–2–402(a)(iii) burdened the fundamental constitutional right to pursue one's chosen means of livelihood by imposing a discriminatory residence classification. Classifications based on nonresidency cannot stand " 'unless there is something to indicate that non-[residents] constitute a peculiar source of evil at which the statute is aimed.' " *Powell* at 362 (quoting *Toomer v. Witsell,* supra, 334 U.S. at 398, 68 S.Ct. at 1163). In *Powell,* no such evil was found. Because the degree of discrimination against nonresidents did not bear a close relation to any of the State's asserted reasons for the discriminatory treatment, we held that § 23–2–402(a)(iii) violated the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution. *Powell,* at 362. The same is true here.

Following our holding in *Powell,* supra, the Wyoming legislature in 1987 amended § 23–2–402, supra, by striking the residen-

cy requirement contained in subsection (a)(iii). Thus residency is no longer a requirement of an applicant to obtain a *guide* license.

 There is no substantial difference between application for a guide license and an outfitter license. The residency requirement in the outfitter statute here is as constitutionally offensive as it was in the guide license statute, § 23–2–402, W.S. 1977, which we declared unconstitutional. We hold, therefore, that § 23–2–404(d)(iii), W.S.1977, is unconstitutional because it violates the Privileges and Immunities Clause of Art. IV, § 2 of the United States Constitution.

The State in its brief expressed a concern that the game and fish commission's control will be lessened by the existence of nonresident guides and outfitters in the state. We do not share that concern. Thus, the State might require that a licensed nonresident outfitter appoint the game and fish commission as his agent for service of process as a condition of licensure. There are other means by which necessary control can be insured, including but not limited to those stated in subsections (iv) through (ix) of § 23–2–404(d), W.S.1977, pertaining to outfitters, which provide that an applicant for a license:

"(iv) Possesses proper equipment for the protection and convenience of his guests;

"(v) Can satisfactorily pass a written or oral examination, devised and administered at the discretion of the commission. Such examination may include knowledge of the area, of hunting practices, of big game, of guiding practices, and of game and fish laws;

"(vi) Fully capable of providing quality guide service to clients;

"(vii) Knowledgeable of area to be hunted or fished, trophy care and appropriate game and fish laws;

"(viii) In the case of an applicant for a big game animal outfitter's license or renewal thereof, the commission shall require the applicant to post and maintain a five thousand dollar ($5,000.00) surety or cash bond with the commission to protect contractual rights of clients of outfitters;

"(ix) In the case of an applicant for a big game animal outfitter's license or renewal thereof, the commission shall require the applicant to post and maintain a liability insurance policy to protect clients and property owners against injury or damage as a result of negligence by outfitters or their agents or employees. The limits of coverage under the liability insurance policies shall be at least twenty-five thousand dollars ($25,000.00) for property damage and for personal injury or death, one hundred thousand dollars ($100,000.00) for injuries to or death of one (1) person and three hundred thousand dollars ($300,000.00) for all injuries or death from any one (1) occurrence."

Reversed.