**A–G–E CORPORATION, a South Dakota Corporation; Gerald Johnson, as Shareholder in A–G–E Corporation; J.H. Hilt Engineering, Inc., a South Dakota Corporation; Joe Hilt, as Majority Shareholder in J.H. Hilt Engineering, Inc.; Mining Corporation, Inc., a Delaware corporation; John Williams, an employee of Mining Corporation, Inc.; William Ernest Simmons, a former employee of Mining Corporation, Inc., The Associated General Contractors of South Dakota, Inc., a South Dakota corporation, Plaintiffs–Appellants,**

**v.**

**UNITED STATES of America, acting By and Through; The OFFICE OF MANAGEMENT AND BUDGET, EXECUTIVE BRANCH AGENCY; The Department of Interior, Executive Branch Agency; Richard G. Darman,**

---

the Director of the Office of Management and Budget and his successors in office; Manual Lujan, Jr., the Secretary of the Department of Interior and his successors in office, Defendants–Appellees.

No. 91–1597.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 9, 1991.

Decided June 30, 1992.

Ronald G. Schmidt, Pierre, S.D., argued, for plaintiffs-appellants.

Alfred Mollin, Dept. of Justice, Washington, D.C., argued (William Kanter, Dept. of

Justice, Washington, D.C., on the brief), for defendants-appellees.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

In this lawsuit, South Dakota and Colorado contractors and a trade association seek to enjoin the Department of the Interior (DOI) and the Office of Management and Budget (OMB) from permitting Wyoming and Montana to employ resident preferences when using funds granted under Title IV of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1231–43. The district court[1] dismissed plaintiffs' claims on the ground that they lack standing. *A–G–E Corp. v. United States*, 753 F.Supp. 836 (D.S.D.1991). We affirm.

## I.

The Act created the Abandoned Mine Reclamation Fund, the coal industry's Superfund. *See* H.R.Rep. No. 101–294, 101st Cong., 1st Sess. 12 (1989). DOI levies a fee on every ton of coal mined and awards grants from the Fund to States to restore and reclaim abandoned mine lands. A State is eligible for grants for Abandoned Mine Land Reclamation projects (called AMLRs) after DOI approves its statewide plan. States typically hire private contractors to do the AMLR work.

OMB Circular A–102 is an internal Executive Branch management directive that includes, in its Attachment O, "standards and guidelines for the procurement of supplies, equipment, construction and services" under federal grants. Prior to October 1, 1988, the only criteria for contractors listed in Attachment O pertained to their ability to perform the contract, including qualifications such as integrity, past per-

formance, and resources. DOI's regulations require that state purchasing and procurement systems comply with Attachment O before the Secretary will approve a State's reclamation plan. *See* 30 C.F.R. § 884.13(d)(3). Wyoming's approved reclamation plan includes a Purchasing and Procurement section stating that the State "will conform to the requirements of OMB Circular A–102, Attachment O," including the following commitments:

> All procurement transactions regardless of whether negotiated or advertised and without regard to dollar value will be conducted in a manner so as to provide maximum open and free competition.

> Contracts will be made only with responsible contractors who have the ability to perform the contract. Consideration will be given to integrity, past record of performance, financial and technical resources, and accessibility to other necessary resources.

Wyoming is one of nine States[2] that by statute gives a preference to resident contractors and laborers when contracting for public buildings, public works, and the like. One statute requires that contractors on such projects employ qualified, available Wyoming laborers; another allows the State to award contracts to resident bidders who are within five percent of the low bids. *See* Wyo.Stat. §§ 16–6–203, 16–6–102(a). However, these statutes do not apply if there are conflicting federal statutes or regulations and federal funds are involved in the project. *See* Wyo.Stat. §§ 16–6–205, 16–6–108.

In June 1987, DOI advised Wyoming that it could apply its resident preference laws to AMLR procurement contracts. Effective October 1, 1988, DOI adopted new grant administration regulations known as the Common Rule. *See* 53 Fed.Reg. 8027 (March 11, 1988); 43 C.F.R. §§ 12.41 *et*

---

**1.** The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota.

**2.** The parties stipulated that, in February 1988, Alabama, Alaska, Arizona, Arkansas, California, Massachusetts, Montana, New Mexico, and Wy-

oming had resident preference statutes applicable to state procurement. Plaintiffs include a bidder that lost a 1989 AMLR contract because of Montana's preference statute, but we will simplify this opinion by discussing only the Wyoming law.

seq.[3] Included in the Common Rule was a new regulation providing that, "When procuring property and services under a grant, a State will follow the same policies and procedures it uses for procurements from its non-Federal funds." *See* 43 C.F.R. § 12.76(a). By apparently permitting Wyoming to enforce its laws favoring resident contractors and laborers when awarding AMLR contracts,[4] the Common Rule was consistent with DOI's June 1987 informal advice. It also reflected the President's federalism principles. *See* Exec.Order No. 12612, § 3, 52 Fed.Reg. 41685 (Oct. 26, 1987).

Plaintiffs commenced this action in October 1988 seeking declaratory and injunctive relief prohibiting DOI and OMB from "continuing any action which allows any of the fifty states or agencies thereof from using in-state geographical preferences in connection with federally funded AMLR grants or procurements." Plaintiffs include non-resident contractors who were low bidders on Wyoming AMLR contracts but lost when the State applied its resident contractor preference statute, and successful AMLR contractors who were compelled to employ more costly Wyoming laborers under the resident laborer preference statute. Plaintiffs contend that the Common Rule has injured and will continue to injure non-resident AMLR contractors and potential contractors, including themselves, by permitting Wyoming and other States to enforce their anti-competitive resident preference statutes.

The parties submitted the case to the district court on a lengthy fact stipulation, supporting affidavits, and cross-motions for summary judgment. The district court found that Wyoming began to apply its resident preference laws to AMLR contracts in June 1987, and that DOI has not formally determined whether the Common Rule allows or mandates application of such state laws. The court entered judg-

ment for defendants dismissing plaintiffs' complaint because any injury suffered by plaintiffs is traceable to Wyoming's enactment and enforcement of its preference laws rather than the actions of the defendants. 753 F.Supp. at 853. Plaintiffs appeal, contending that the district court erred in denying them standing, and that they are entitled to summary judgment on the merits.

## II.

Plaintiffs have pleaded background facts in great detail, and they vigorously argue that resident preference laws are bad public policy. However, they are vague in describing what particular causes of action they are pursuing. We are told in general terms that defendants are violating various provisions of the Constitution, the Administrative Procedure Act, and federal procurement laws. Because all these purported causes of action have obvious and fatal flaws, the district court properly granted summary judgment for defendants.

■ A. Plaintiffs have no standing to challenge OMB's role in adopting Circular A–102 and in coordinating the promulgation of the Common Rule by twenty-four federal departments and agencies. The constitutional requirements for standing are well-settled:

> [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). The parties stipulated that, "Revised OMB Circular A–

---

**3.** The Common Rule was adopted by twenty-four agencies at the same time OMB adopted a revised Circular A–102. These actions followed extensive notice and comment periods in 1984 and 1987. *See* 52 Fed.Reg. 21819 (June 9, 1987); 49 Fed.Reg. 24958 (June 18, 1984).

**4.** By contrast, the Common Rule specifically forbids grantees other than States from employing resident preferences. *See* 43 C.F.R. § 12.-76(c)(2).

102 does not describe, determine, or mandate the substance of state procedures to be followed in awarding federal aid projects," and that, "OMB was not one of the twenty-four agencies that issued [the common] rule." It is obvious that plaintiffs suffered no direct injury from OMB's internal management directives to operating departments and agencies such as DOI.

■ B. Plaintiffs argue that they are entitled to relief under the APA, 5 U.S.C. § 706, because DOI was arbitrary and capricious in allowing States to follow their own procurement policies and practices in spending AMLR grant monies. Procurement and the administration of government grants are functions peculiarly within the expertise and authority of the Executive Branch.

> When a plaintiff seeks to enjoin the activity of a government agency, even within a unitary court system, his case must contend with "the well-established rule that the Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'"

*Allen v. Wright*, 468 U.S. 737, 761, 104 S.Ct. 3315, 3329–30, 82 L.Ed.2d 556 (1984) (quoting *Rizzo v. Goode*, 423 U.S. 362, 378–89, 96 S.Ct. 598, 607–08, 46 L.Ed.2d 561 (1976)). Unless plaintiffs can point to a specific constitutional or statutory constraint that is violated by the Common Rule, we think it clear that the courts may not interfere with the manner in which DOI carries out its grant administration responsibilities. *See, e.g., Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543–544, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978).

■ C. Turning to the constitutional issues, plaintiffs allege violations of the Privileges and Immunities, Commerce, Equal Protection, and Due Process clauses. A direct attack on Wyoming's resident preference statutes on these grounds would clearly face an uphill battle after *White v. Massachusetts Council of Constr. Employers, Inc.*, 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983), and *United Bldg. & Constr. Trades Council v. Camden*, 465 U.S. 208, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984). Indeed, the state courts have upheld Wyoming's resident preference laws against precisely this constitutional challenge. *See State v. Antonich*, 694 P.2d 60, 61–64 (Wyo.1985); *Galesburg Constr. Co. v. Board of Trustees*, 641 P.2d 745, 750 (Wyo.1982).

But this is not a direct attack. Rather, plaintiffs urge us to enjoin DOI from implementing the Common Rule because it "encourage[s] states to violate the Privileges and Immunities Clause, the Commerce Clause, the Equal Protection Clause, and/or the Due Process Clause of the Constitution." Though the Common Rule itself neither provides for resident preferences nor explicitly endorses them, plaintiffs argue that it allows them to operate. Aware that the Wyoming preference statutes bow to conflicting federal rules, plaintiffs ask us to enjoin DOI from enforcing the Common Rule, confident that Wyoming would then take the AMLR grant money on our terms rather than refuse the grants.

The constitutional issues plaintiffs seek to raise require careful evaluation and balancing of the State's justifications for its preference laws. *See Camden*, 465 U.S. at 222–23, 104 S.Ct. at 1030. By plaintiffs' own choice, Wyoming is not a party to this lawsuit; it is not even a State in this circuit. Therefore, this is perhaps the worst conceivable forum for adjudicating these sensitive constitutional issues. In effect, plaintiffs ask this court to order DOI to prevent Wyoming from applying its own laws to its own procurement contracts. Unless Congress has clearly directed DOI to play that role, we agree with the district court that plaintiffs lack standing to assert these purported constitutional claims. *See Lujan v. Defenders of Wildlife*, —— U.S. ——, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

D. That brings us to plaintiffs' contention that DOI's Common Rule violates federal statutory law. If the Act contained a provision forbidding the application of state resident preference laws to AMLR grants, we would be inclined to believe that plaintiffs, as bidders disadvantaged by Wyoming's laws, would have standing to seek

to enjoin DOI from violating that statutory command.

But the Act contains no such command. Instead, plaintiffs contend that the Common Rule violates general congressional policies favoring "full and open competition" in *federal* procurement, found in 41 U.S.C. § 253(a)(1)(A), and "encourag[ing] competition in making grants and cooperative agreements," found in 31 U.S.C. § 6301(3). The former statute has nothing to do with federal grants to the States, and the latter is far too general to support the private right of action plaintiffs assert. Thus, as one would expect, plaintiffs have failed to identify a federal statute that prohibits DOI from implementing this aspect of the President's federalism policy by allowing AMLR grantee States to follow their normal procurement policies and practices. In the absence of such a controlling federal statute, this case is nothing but an indirect constitutional attack on the state resident preference laws, and we agree with the district court that plaintiffs lack Article III standing to mount this attack.

The judgment of the district court is affirmed.